Argued and submitted December 19, 1988, affirmed on Counts I and II; reversed on
Count III February 8, 1989

# STATE OF OREGON,
*Respondent,*

*v.*

# WALTER LEROY MARTIN,
*Appellant.*

## (C 8707-33666; CA A47231)

769 P2d 203

Robert L. McKee, Portland, argued the cause and filed the brief for appellant.

Michael Livingston, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Defendant seeks reversal of his convictions of bribe giving (Count I), ORS 162.015, bribing a witness (Count II), ORS 162.265, and tampering with a witness (Count III), ORS 162.285. We reverse on Count III and affirm on Counts I and II.

The case was tried to a jury. We summarize the evidence in the light most favorable to the state. Defendant, an attorney, represented Vernwald in a prosecution for driving under the influence of intoxicants. This case arose from a series of transactions between defendant and Johnson, who was the arresting officer and had issued Vernwald the citation for that offense.

On July 2, 1986, the scheduled date for the Vernwald trial, the District Attorney advised the court that the arresting officer was not available. The trial court dismissed the case, granting the state leave to refile. Defendant told Vernwald that the state could reissue the citation any time within two years after the initial citation and that, if she paid him $750, he could "get rid of the case" by seeing what "[he] could do about trying to make certain that the case would not be reissued."

After the dismissal, the District Attorney discovered that he was mistaken and that Johnson had been ready for trial and asked Johnson if he would issue Vernwald a new citation for the same charge. He agreed to do so. Johnson testified that defendant asked him "if there was any way he could keep from reissuing the case." Johnson told him that he "didn't know if [he] could do that, because the case involved an accident, * * * [but] if [he] could, [he] would try to keep from reissuing that case[.]"

A week or two later, defendant called Vernwald at work, asked her if she had the money and told her that he would "make [the case] die." Vernwald contacted defendant several times on July 16, 1986, to inquire about how the money was to be used. On the advice of another attorney, she recorded those conversations. Defendant told her that the $750 did not cover his fee, that he was trying to prevent the issuance of a new citation, that he would take a check for $750 if it were made out to "cash," that he would "not * * * do

anything unless [he had] some kind of lock on it" and that "[i]f there's no lock on it, you get your money back." Vernwald turned over the tape to the District Attorney's office and agreed to cooperate in a police investigation of defendant.

The police arranged for payment of $750 and recorded the conversation between Vernwald and defendant when he picked up the money at her home. When asked how the money was to be used, he replied that he was "trying to preclude" the issuance of a new citation, that Johnson was his friend and would "tip [him] off if anything happen[ed]" and that "the less you know about what I'm going to do the better off you are."

In July, 1986, Johnson assured defendant that he would not reissue the citation. Later that month, when speaking to Johnson at the courthouse, defendant said the name "Vernwald" and put an envelope containing $250 into Johnson's pocket. Johnson testified that he received the money.

Johnson did not issue Vernwald a second citation. On November 19, 1986, the District Attorney's office served her with a new citation. Vernwald called defendant to inform him that she had been served. He told her that he would return her money "if it backfired." On December 3, 1986, Detective Sussman, posing as Vernwald's brother, taped the telephone conversation that he had with defendant regarding how the money was to be used. Defendant told him that the money was not an attorney fee, that Vernwald "could have her money back any time she want[ed him] to handle this in the normal course" and that it was none of his business how he was going to arrange it. That evening defendant went to Vernwald's home and gave her a check for $750. He told her that he had "tried to fix it" so that she would not get another ticket, that "[y]ou can't buy anyone off" and that "a hard-nosed young prosecutor * * * had pulled an end run by taking the case away from Officer Johnson and giving it to the D.A.'s investigator to issue instead." That conversation was also recorded.

Later that month, defendant saw Johnson at the courthouse and told him that Vernwald wanted her money back, because she had been served with a second citation. Johnson testified that, when he offered to return the $250 that defendant had given him, defendant told him to "wait and see what happens." Johnson also testified that defendant asked

him in early January if there were some way that he could keep from appearing on the Vernwald case, if it came to trial. Johnson told him that, if the trial was set on one of his police training days, February 24, 25 or 26, he would not be there. On January 14, 1987, when the court called the Vernwald case and the state was not ready to proceed, defendant requested a trial date of February 24, 25 or 26. The judge set the case for trial on February 26. Johnson assured defendant that he would not be present.

On February 23 or 24, the court coordinator's office of the Portland Police Bureau issued a subpena for Johnson to appear at the February 26 trial. It was placed in his mailbox at the police station. Johnson had no knowledge of the subpena until he returned to work on February 27, the day after the trial. There was no evidence that the subpena was actually served. Because Johnson was not present at the trial, the state was unable to put on any evidence, and the trial court entered a judgment of acquittal.

■ First, defendant assigns error to the trial court's denial of his motions for judgment of acquittal on the ground that the evidence was insufficient to support the three convictions. With regard to Count I, bribe giving, he contends that the evidence did not establish that he gave any money to Johnson. He further contends that, even assuming that Johnson received money from him, the evidence failed to establish that his actions induced or influenced Johnson not to reissue the citation, because Johnson had already told him that he would not reissue the citation before the giving of the alleged bribe.

ORS 162.015(1) provides:

"A person commits the crime of bribe giving if the person offers, confers or agrees to confer any pecuniary benefit upon a public servant with the intent to influence the public servant's vote, opinion, judgment, action, decision or exercise of discretion in an official capacity."

Johnson testified that defendant said the name "Vernwald" and put an envelope with $250 in his pocket. He also testified that he received the money. There is substantial evidence from which the jury could find beyond a reasonable doubt that defendant conferred a pecuniary benefit on Johnson with the

requisite intent.[1] *See State v. Krummacher,* 269 Or 125, 137-38, 523 P2d 1009 (1974); *State v. Crawford,* 90 Or App 242, 245, 752 P2d 316, *rev den* 306 Or 195 (1988).

■ Defendant also argues that the convictions on Count II, bribing a witness, and Count III, tampering with a witness, can not be sustained, because the evidence does not establish that Johnson had been "legally summoned" when defendant told him to keep the $250 and when he later asked him not to appear at trial.

ORS 162.285 provides, in relevant part:

"(1) A person commits the crime of tampering with a witness if:

"* * * * *

"(b) The person knowingly induces or attempts to induce a witness to be absent from any official proceeding *to which the person has been legally summoned.*" (Emphasis supplied.)

The state concedes that Johnson had not been served with a subpena when defendant purportedly induced him to be absent from trial and that, therefore, under our interpretation of ORS 162.285 in *State v. Wagner,* 67 Or App 75, 78, 676 P2d 937 (1984), the conviction on Count III must be reversed. In *Wagner,* guided by the drafter's commentary, we construed the language in subsection (b) to require that a witness must have been served with a subpena before the inducement. 67 Or App at 78. The trial court erred in denying defendant's motion for acquittal on Count III.

■ Next, we turn to whether our holding in *Wagner* is also applicable to Count II, bribing a witness, under ORS 162.265, which provides, in part:

"(1) A person commits the crime of bribing a witness if the person offers, confers or agrees to confer any pecuniary benefit upon a witness in any official proceeding, or a *person the person believes may be called as a witness,* with the intent that:

---

[1] As explained in the Commentary to Oregon Criminal Code of 1971 82 (1971):

"The *mens rea* requirement in the bribe giving section is framed in terms of 'with the intent.' The thrust of this requirement is to avoid the necessity of proving a 'meeting of the minds' crucial to an agreement or understanding. The subjective wrongful intent of the bribe offeror is the gravamen of bribe giving."

"* * * * *

"(c) The person will be absent from any official proceeding *to which the person has been legally summoned."* (Emphasis supplied.)

Although subsection (1)(c) contains the same phrase as ORS 162.285(1)(b), the terms of ORS 162.265 are different from those of ORS 162.285(1)(b). ORS 162.265(1) prohibits bribing a "witness in any official proceeding" or, in the alternative, *"a person the person believes may be called as a witness*[.]" (Emphasis supplied.)

The language in subsection (1)(c), modifies the *mens rea* requirement of the offense, which is "an intent to influence improperly the course of official proceedings." Commentary to Oregon Criminal Code of 1971 101 (1971). The crime is not conditioned on the recipient having been summoned as a witness at the time of the bribe. Reading the provision as a whole, we conclude that the offense is complete when the person makes an offer of pecuniary benefit to a person whom he believes may be called as a witness with the specific interest that the person, if legally summoned, will not appear.

Johnson testified that he was the arresting officer, that he alone administered the Intoxilyzer test to Vernwald and that his testimony would be necessary to get the results of that test into evidence. There is sufficient evidence from which a jury could find that defendant, an experienced attorney, believed that Johnson would be called as a witness and that he intended to influence the Vernwald trial improperly by Johnson's absence from it when he told him to keep the $250. The trial court properly denied defendant's motion for judgment of acquittal on Count II.

■ Defendant also challenges the trial court's admission of the tape recordings of his telephone conversations with Vernwald and the police. He contends that the poor quality of the recordings created a clear danger of prejudice and should have been excluded under OEC 403,[2] because the mere presence of his voice on the tapes "trigger[ed] a conclusion of

---

[2] OEC 403 provides, in part:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]"

culpability." Although the tapes may have been difficult to understand, we find no abuse of discretion in admitting them.

Defendant also assigns error to the the trial court's denial of his motion for a mistrial on the ground that the trial court judge's statements reflected a personal bias against him and interfered with his guarantee of a fair and impartial trial. Two of the three exchanges between defendant and the judge took place outside the presence of the jury and, therefore, could have had no effect. The jury was, however, present when the judge stated:

"Court:   After two weeks, folks, you realize that—you know that attorneys and judges just love to talk.

"And would you just ask the question now and quit this?"

On the basis of that statement alone, we cannot say that defendant was deprived of a fair trial or that the trial court abused its discretion in denying his motion for a mistrial. *State v. Fuller,* 56 Or App 719, 722, 643 P2d 382, *rev den* 293 Or 340 (1982).

Affirmed on Counts I and II; reversed on Count III.