**REGIONAL TRANSPORTATION DISTRICT, Petitioner,**

v.

**Jose LOPEZ, Respondent.**

No. 95SC46.

Supreme Court of Colorado,
En Banc.

May 20, 1996.

Rolf G. Asphaug, Denver, for Petitioner.

Glenn F. Younger, Denver, for Respondent.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Timothy R. Arnold, Deputy Attorney General, Civil Litigation Section, Tort Litigation, Denver, for Amicus Curiae the State of Colorado.

Charles H. Richardson, Julia A. Bannon, Aurora, for Amicus Curiae the City of Aurora.

David W. Broadwell, Denver, for Amicus Curiae the Colorado Municipal League.

Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari to review *Lopez v. Regional Transportation District,* 899 P.2d 254 (Colo.App.1994). Jose Lopez brought this action against the Regional Transportation District (RTD) pursuant to the Colorado Government Immunity Act (CGIA), sections 24–10–101 to –120, 10A C.R.S. (1988 & 1992 Supp.).[1] In his complaint, Lopez stated two causes of action against RTD, a negligence claim and a personal injury protection (PIP) claim under the Colorado Auto Accident Reparations Act (No–Fault Act), sections 10–4–701 to –725, 4A C.R.S. (1994 & 1995 Supp.). RTD moved to dismiss Lopez's complaint for lack of subject matter jurisdiction pursuant to C.R.C.P. 12(b)(1) on two grounds: (1) that Lopez had not provided timely notice of his negligence claim under sections 24–10–109(1) & (3), 10A C.R.S. (1988 & 1995 Supp.); and (2) that Lopez commenced his PIP claim prematurely in violation of section 24–10–109(6), 10A C.R.S. (1988).[2] The trial court dismissed the action with prejudice for failure to state a claim under the CGIA.[3] The court of appeals reversed, holding that Lopez had provided timely notice of his negligence claim and that his PIP claim should not have been dismissed as prematurely filed. We reverse the court of appeals on Lopez's negligence claim and remand that portion of the case to the court of appeals with instructions to send the case back to the trial court for further fact findings consistent with this opinion. We affirm the court of appeals on other grounds that Lopez's PIP claim should not have been dismissed.

I.

On June 16, 1993, Lopez filed a complaint against RTD in Denver District Court. Lopez sought past and future medical expenses, loss of income, and compensation for pain and suffering for injuries he allegedly sustained on October 14, 1992, when he disembarked from an RTD bus and lost his footing on a slippery substance on the steps of the bus. As a result of the slip, Lopez claimed to have suffered injuries to his head, neck, and back. In addition, Lopez sought compensatory, consequential, and punitive damages for RTD's failure to pay PIP benefits pursuant to the No–Fault Act. Lopez's complaint asserted that he filed timely notices of claim with RTD. Copies of his two notices of claim were attached to the complaint.

■ Under the CGIA, an individual seeking recourse against a public entity, such as RTD, must notify that entity of any claims against it within 180 days of discovery of the injury. An action cannot be commenced by the claimant until the public entity has denied the claim or until ninety days have elapsed from the filing of the notice. Subsections (1) and (6) of section 24–10–109, 10A C.R.S. (1988 & 1995 Supp.), of the CGIA provide that:

> (1) Any person claiming to have suffered an injury by a public entity or by an employee thereof while in the course of such employment, whether or not by a willful and wanton act or omission, shall file a written notice as provided in this section within one hundred and eighty days after the date of the discovery of the injury, regardless of whether the person then knew all of the elements of a claim or of a cause of action for such injury. Com-

---

**1.** Although the CGIA has since been revised, *see* §§ 24–10–101 to –120, 10A C.R.S. (1988 & 1995 Supp.), section 24–10–109 was last amended in 1992.

**2.** We granted certiorari on the following issues:

(1) Whether the court of appeals erred in construing section 24–10–109(3), 10A C.R.S. (1988), which specifies that a notice of claim against a public entity is "effective upon mailing by registered mail or upon personal service," to mean that such notice is also effective upon mailing by regular mail.

(2) Whether the court of appeals erred in concluding that it was "too harsh" to dismiss with prejudice an action filed prematurely in noncompliance with section 24–10–109(6), 10A C.R.S. (1988 & 1994 Supp.), even though subsection (1) of the same section specifies that "failure of compliance" with the "provisions of this section" shall "forever bar" the action.

**3.** RTD also moved to dismiss Lopez's claims for punitive damages. The trial court dismissed the claims and the court of appeals upheld that decision. That issue is not before the court.

pliance with the provisions of this section shall be a jurisdictional prerequisite to any action brought under the provisions of this article, and failure of compliance shall forever bar any such action.

. . . .

(6) No action brought pursuant to this article shall be commenced until after the claimant who has filed timely notice pursuant to subsection (1) of this section has received notice from the public entity that the public entity has denied the claim or until after ninety days has passed following the filing of the notice of claim required by this section, whichever occurs first.

Lopez's first notice, relating to his negligence claim, was sent to RTD by first-class mail on April 12, 1993, 179 days after his accident. RTD did not receive the first notice until April 19, 1993, some seven days after the 180–day notice period had expired under section 24–10–109(1), 10A C.R.S. (1995 Supp.). That notice did not contain a statement of personal service. RTD was notified separately of Lopez's PIP claim on June 11, 1993.[4] The PIP notice did contain a statement of personal service.[5] RTD claims that it had not denied Lopez's PIP claim when Lopez filed his complaint in district court.[6]

4. Lopez's first notice of claim stated an initial violation of the No–Fault Act (failure to pay loss of essential services within thirty days of entitlement). His second notice of claim stated a continuing violation of the No–Fault Act.

5. Although Lopez's second notice, regarding his PIP claim, was sent more than 180 days after the accident, RTD did not challenge his PIP claim as time barred under § 24–10–109(1). Instead, RTD moved to dismiss Lopez's PIP claim as being prematurely filed pursuant to § 24–10–109(6).

6. Lopez takes the position that, although he had not received a formal denial of his PIP claim from RTD, it was reasonable for him to assume that his claim was disputed. RTD vehemently opposes this characterization. Just one day prior to Lopez's filing of the complaint, RTD's counsel wrote to Lopez's counsel requesting additional information on his PIP claim. In closing, counsel for RTD explicitly wrote "[t]his letter is not a denial of Mr. Lopez's claim pursuant to § 24–10–109, C.R.S. As explained above, RTD still needs additional information to consider and respond to the claim raised in your June 11,

## II.

Lopez contends that his negligence notice was not late under the CGIA for the following reasons: (1) the date of mailing by regular mail is the effective date of notice; and (2) RTD was personally served on April 12, 1993, at 4:58 p.m. RTD contends that regular mail is not a statutorily prescribed method of establishing the effective date of notice. We agree with RTD.

## A.

■ The court of appeals agreed with Lopez that he had timely notified RTD by sending the notice via regular mail before the 180–day period had elapsed.[7] We reverse the court of appeals because the statute clearly and unambiguously sets out that, for purposes of mailing, "notice shall be effective upon mailing by registered mail." § 24–10–109(3), 10A C.R.S. (1988).[8]

The court of appeals relied on some of our previous cases in holding that Lopez's negligence notice was timely filed:

The supreme court has declared that the notice of claim required by § 24–10–109(1) is effective upon mailing. *Trinity Broadcasting of Denver, Inc. v. City of Westminster*, 848 P.2d 916 (Colo.1993). It has also held that, in addition to delivery by regis-

1993 notice letter." On June 25, 1993, Lopez's counsel responded, advising RTD's counsel that he "did not receive [the] June 15, 1993 correspondence until after the lawsuit had already bee [sic] filed. Based upon [their] previous telephone conversations it was reasonable to conclude that Mr. Lopez's claim was disputed and could not be resolved until the court decided it."

7. While the court of appeals did not explicitly construe § 24–10–109(3), its holding does so implicitly.

8. Section 24–109–103(3), 10A C.R.S. (1988), provides that:

If the claim is against the state or an employee thereof, the notice shall be filed with the attorney general. If the claim is against any other public entity or an employee thereof, the notice shall be filed with the governing body of the public entity or the attorney representing the public entity. *Such notice shall be effective upon mailing by registered mail or upon personal service.*

(Emphasis supplied.)

tered mail and personal service, the notice may be delivered by regular mail or other methods of service. *Woodsmall v. Regional Transportation District,* 800 P.2d 63 (Colo.1990); *see also Blue v. Boss,* 781 P.2d 128 (Colo.App.1989); § 24–10–109(3), C.R.S., (1988 Repl.Vol. 10A). *Lopez,* 899 P.2d at 256. Thus, the court of appeals concluded that "a properly-addressed notice of claim sent by regular mail within the 180–day time limit is effective upon mailing, even if it is not received by the public entity's governing body or its counsel until after the 180 days have expired." *Id.* Judge Roy dissented on this portion of the decision. In reaching this conclusion, the court of appeals misinterpreted our decisions and the plain and unambiguous import of section 24–10–109(3).

It is axiomatic that when interpreting a statute, we must effect the goal of the legislature. *Dawson v. Reider,* 872 P.2d 212, 214 (Colo.1994). Thus, we look initially to the language of the statute for guidance. *Jones v. Cox,* 828 P.2d 218, 221 (Colo.1992). If the language is plain and unambiguous, our task is accomplished by "giving effect to the commonly accepted meaning of the words appearing" in the statute. *Regional Transp. Dist. v. Voss,* 890 P.2d 663, 667 (Colo.1995). Here, the statute specifically states that "notice shall be effective upon mailing by registered mail or upon personal service." Although nothing in the statute precludes service by regular mail, the plain terms of the statute do not provide that posting a notice by regular mail is a valid method of establishing the effective date of service. Further, the General Assembly has defined registered mail in section 2–4–401(12), 1B C.R.S. (1980), as including certified mail. By its omission, regular mail is not encompassed within the definition of registered mail. Thus, if the General Assembly intended to include regular mail as a means of fixing the effective date of service under the CGIA, it would have specified regular mail in addition to registered mail in section 24–10–109(3) since the two are by definition distinct mailing methods.

Contrary to Lopez's assertions, this construction is consistent with our previous decisions. In *Woodsmall v. Regional Transp. Dist.,* 800 P.2d 63 (Colo.1990), we considered whether a claimant who files notice within 180 days but fails to specify all of her claims has failed to comply with the jurisdictional requirements set out in section 24–10–109(1). We found that strict compliance with the notice requirements, for content purposes, was not mandated by the General Assembly's revisions to the statutory scheme in 1986. *Id.* at 68. Instead, we held that the proper standard was substantial compliance. However, we also held that notice need not be effected by registered mail:

> Subsection (3) of section 24–10–109 does not state that service by registered mail or personal service is mandatory but only that the notice of claim "shall be effective upon mailing by registered mail or upon personal service." Subsection (3) is intended as a method of conclusively establishing the effective date of service, for purposes of the 180–day requirement, is the date of registered mailing.

*Id.* at 69 (further stating that "resort to service by regular mail does not carry with it the presumption that service has been effected on the date of mailing"); *see also Blue v. Boss,* 781 P.2d 128, 130 (Colo.App.1989) ("the purpose of mailing by registered mail is to fix an effective date for the calculation of the 180 days for the filing of the notice"), *cert. denied,* No. 89SC398 (Colo. Oct. 23, 1989). In effect, we distinguished between the substantial compliance standard applicable to the contents of the notice and the mandatory compliance standard applicable to the 180–day provision.[9]

Subsequently, in *East Lakewood Sanitation Dist. v. District Court,* 842 P.2d 233 (Colo.1992), we made explicit that the substantial compliance language in *Woodsmall* does not apply to the 180–day requirement and is limited to the contents of the notice given by claimants. *Id.* at 235. Failure to strictly comply with the 180–day notice requirement results in dismissal of the action. *Id.* at 236. Hence, our holding in *Woodsmall*

---

9. The meaning of the "compliance" language of the statute has been the subject of considerable

attention both by this court and by the legislature. *See Woodsmall,* 800 P.2d at 67–69.

does not support the conclusion reached by the court of appeals in this case.

Other cases relied upon by the court of appeals do not persuade us otherwise. For example, in *Trinity Broadcasting of Denver, Inc. v. City of Westminster*, 848 P.2d 916 (Colo.1993), we set forth the notice requirements under the CGIA and noted that "[n]otice is effective upon mailing." *Id.* at 922 (citing § 24–10–109(3)). However, in *Trinity*, the claimant notified the public entity by registered mail, as specified in the statute. Therefore, we were not presented with the issue raised here. Similarly, in *Lafitte v. State Highway Dep't of the State of Colorado*, 885 P.2d 338 (Colo.App.1994), the claimant timely sent the attorney general notice of her claim by registered mail. The claimant, however, failed to affix the appropriate postage and the notice was returned to her after the addressee refused to pay the balance due for postage. She proceeded to resend the notice, this time by certified mail, but the 180 days had already lapsed. Under these "unique circumstances," the court of appeals held that the claimant had substantially complied with the notice requirements of the CGIA. In *Lafitte*, the claimant utilized the prescribed mailing method. Thus, the "unique circumstances" in her case distinguish it from the facts presently before us. In addition, as noted by Judge Roy in his dissent, *Lopez*, 899 P.2d at 258 (Roy, J. dissenting), the court of appeals in *Lafitte* misread our decisions construing section 10–24–109(3) and incorrectly invoked the "substantial compliance" standard which is applicable only to the content of the notice and not to the 180–day requirement. *See East Lakewood Sanitation Dist.*, 842 P.2d 233 (holding that the 180–day notice requirements must be strictly complied with); *see also* discussion *supra* pp. 1190–91. *Lafitte*, accordingly, must be and is overruled as to its holding on the 180–day requirement.

In sum, the date of mailing by regular mail has no legal significance. It is the date of receipt which governs whether notice sent by regular mail is timely. In contrast, the date

of mailing by registered mail is the effective date for purposes of notice under the CGIA even when notice is not received by the public entity within the 180 days.

### B.

In his response to RTD's motion to dismiss, Lopez asserted for the first time that RTD had been personally served on April 12, 1993, at approximately 4:58 p.m. Lopez, however, did not provide the trial court with any evidence of such personal service. Subsequently, after the trial court granted RTD's motion to dismiss, Lopez filed a C.R.C.P. 60(b)(5) motion to reconsider. Attached to the motion papers were affidavits from Lopez's counsel and his legal assistant detailing personal service on RTD on the first notice of claim.[10] In his affidavit, Lopez's counsel claimed that, because he was not able to locate his legal assistant until after the motion to dismiss had already been granted by the trial court, the affidavits constituted new evidence. The trial court summarily denied Lopez's motion to reconsider.

▮ Although we reverse the court of appeals' analysis, that mailing by regular mail meets the requirements of section 24–10–109(3) when notice is not received by the public entity within 180 days, we hold that the trial court's dismissal of Lopez's negligence claim nevertheless was premature. Lopez's assertion of personal service requires additional fact finding by the trial court. If personal service was effected on April 12, 1993, then Lopez has met the jurisdictional prerequisites of section 24–10–109(3). If, on the other hand, the trial court makes a determination that personal service was not timely perfected, Lopez's negligence claim is properly dismissed.

### III.

We now turn to the second issue raised by RTD, whether Lopez's PIP claim was properly dismissed by the trial court because his complaint was filed before ninety days had passed after he notified RTD of such claim.

---

**10.** The affidavits state that on April 12, 1993, Lopez's counsel drove his legal assistant to RTD's office headquarters in downtown Denver. Lopez's counsel dropped off his legal assistant who attests that she left a copy of the notice with a receptionist in the lobby of the office building.

The court of appeals reversed the trial court because it found that "dismissal with prejudice is too harsh a sanction for premature filing of an action against a public entity in violation of § 24–10–109(6)." 899 P.2d at 257. RTD contends that section 24–10–109 is unambiguous and that a premature filing, like any other violation of that section, should result in a dismissal with prejudice.

■ The issues raised by Lopez's premature filing turn on statutory construction of section 24–10–109. In particular, we must ascertain whether subsections (1) and (6) of section 24–10–109 mandate a dismissal with prejudice of Lopez's PIP claim because lack of compliance with subsection (6) "forever bar[s] any such action" under subsection (1). We hold that principles of statutory construction and equity considerations compel a different result. Therefore, we do not construe a premature filing as a failure to comply with a *jurisdictional* prerequisite requiring dismissal with prejudice. Instead, we deem it to be a failure to comply with a statutory prerequisite that can be cured with the passage of time. The case simply may be held in abeyance until the ninety-day period has run. Alternatively, the trial court may dismiss the claim without prejudice within the ninety-day period; the claimant can refile once the necessary period of time has elapsed. Accordingly, we conclude that the critical language of subsection (1), that "[c]ompliance with the *provisions of this section* shall be a jurisdictional prerequisite," must be interpreted to mean "the provisions of this [sub]section," *i.e.,* subsection (1), rather than the entirety of section 24–10–109.

■ As reviewed above, statutory interpretation is driven first and foremost by legislative intent and it is our goal to effect that intent. In doing so, we look first to the language of the statute. If intent can be ascertained from the statutory language, we need delve no further. These time-honored canons of statutory interpretation, however, are tempered by the constraint that we should avoid a statutory construction which leads to an absurd result. *Board of County Comm'rs v. IBM Credit Corp.,* 888 P.2d 250, 252 (Colo.1995). Forever barring a claimant from pursuing a claim against a governmen-

tal or public entity because the claim was prematurely filed, qualifies as an absurd result and one that we should avoid. Therefore, although the plain language of section 24–10–109 supports RTD's proffered construction, we must inquire further of the legislative intent.

### A.

Amendments to the CGIA effected by the General Assembly in 1986 culminated in the "jurisdictional prerequisite" language of subsection (1) and the addition of subsection (6), which created the ninety-day waiting period at issue in this case. A review of the legislative history of those amendments supports our conclusion that Lopez's PIP claim should not be "forever barred."

Prior to the 1986 amendments to the CGIA, subsection (1) provided that:

(1) Any person claiming to have suffered an injury by a public entity or by an employee thereof while in the course of such employment shall file a written notice as provided in this section within one hundred eighty days after the date of the discovery of the injury. Substantial compliance with the notice provisions of this section shall be a condition precedent to any action brought under the provisions of this article, and failure of substantial compliance shall be a complete defense to any such action.

§ 24–10–109(1), 10 C.R.S. (1982). There was no ninety-day waiting period before 1986. The 1986 amendments altered subsection (1) as follows:

(1) Any person claiming to have suffered an injury by a public entity or by an employee thereof while in the course of such employment shall file a written notice as provided in this section within one hundred eighty days after the date of the discovery of the injury, REGARDLESS OF WHETHER THE PERSON THEN KNEW ALL OF THE ELEMENTS OF A CLAIM OR OF A CAUSE OF ACTION FOR SUCH INJURY. ~~Substantial~~ Compliance with the ~~notice~~ provisions of this section shall be a ~~condition precedent~~ JURISDICTIONAL PREREQUISITE to

any action brought under the provisions of this article, and failure of ~~substantial~~ compliance shall ~~be a complete defense to~~ FOREVER BAR any such action.[11] Ch. 71, sec. 9, 1986 Colo. Sess. Laws 873, 877, Act approved April 29, 1986 (capital letters indicate new material added to existing statute; dashes through words indicate deletions from existing statutes and such material not part of the Act).

In implementing the above changes to subsection (1), the legislature intended to address two concerns. First, the legislature intended to clarify that the 180–day notice period is triggered on the date of the claimant's discovery of the injury and not when the claimant discovers the basis in legal theory for his or her claim. The legislature was responding to this court's holding in *State v. Young*, 665 P.2d 108 (Colo.1983), which, the amendments' proponents contended, undermined the intent of the legislature.[12] *See Hearing on H.B. 1196 Before the House State Affairs Committee*, 55th Gen. Assembly, Second Reg. Sess. (Audio Tape 86–8, February 4, 1986) (testimony of David Brougham, Esq.). Second, the legislature pointedly meant to render the 180–day notice provision into a jurisdictional prerequisite rather than an affirmative defense. These concerns square with the overriding impetus behind the 1986 amendments, to provide certainty and to establish that the liability of government is not unlimited. *See id.* (statement of Representative Charles E. Berry, House sponsor of H.B. 1196).

In his introduction of the 1986 amendments to the Senate Committee on Business and Labor, Senator Jim Lee, the Senate sponsor, briefly summarized the purpose of the 1986 amendments by listing what the amendments were intended to accomplish. *See Hearing on H.B. 1196 Before the Senate Business & Labor Committee*, 55th Gen. Assembly, Second Reg. Sess. (Audio Tape 86–18, March 17, 1986) (statement of Senator Jim Lee). In doing so, he explained that, with respect to the 180–day notice provision, the amendments made notice a jurisdictional requirement rather than merely an affirmative defense. No mention was made by Senator Lee or anyone else of the other provisions found in section 24–10–109 as also constituting jurisdictional prerequisites.

For the most part, these other subsections merely spell out the details of the required notice. For example, subsection (2) specifies that notice shall contain: the names and addresses of the claimant, his attorney, and any public employee involved; the factual basis for the claim; and the amount of damages sought. Subsection (3) states that if the claim is against the state or a state employee, notice shall be provided to the attorney general, or if the claim is against a public entity or a employee thereof, notice shall be provided to the public entity. Subsection (4) provides that if the action is for wrongful death, notice can be provided by an appropriate individual, *e.g.*, the personal representative. These are not "jurisdictional" requirements in the usual sense of the word. The only arguably "jurisdictional" requirements are those found in subsections (5) and (6). We address these subsections in reverse order.

As noted above, the 1986 amendments added subsection 24–10–109(6) as follows:

(6) No action brought pursuant to this article shall be commenced until after the claimant who has filed timely notice pursuant to subsection (1) of this section has received notice from the public entity that the public entity has denied the claim or until after ninety days has passed following the filing of the notice of claim required by this section, whichever occurs first.

---

**11.** Subsection (1) was further revised in 1992 by the insertion of the following clause "while in the course of such employment, *whether or not by a willful and wanton act or omission.*" § 10–24–109(1), 10A C.R.S. (1995 Supp.) (emphasis added to indicate new language).

**12.** In *Young*, we interpreted the "discovery of the injury" language of subsection (1), as it was then codified, to mean when the claimant discovered the basis for the claim. In order to clarify its intent, the legislature added the following language: "after the date of the discovery of the injury, *regardless of whether the person then knew all of the elements of a claim or of a cause of action for such injury.*" § 24–10–109(1), 10A C.R.S. (1995 Supp.) (emphasis added to indicate new language).

Senator Lee described separately the addition of subsection (6) as the ninety-day "cooling-off" period and did not link that provision to subsection (1). *See Hearing on H.B. 1196 Before the Senate Business & Labor Committee,* 55th Gen. Assembly, Second Reg. Sess. (Audio Tape 86–18, March 17, 1986) (statement of Senator Jim Lee). He explained that the purpose of this "cooling off" period is to afford local entities the opportunity to evaluate potential claims and to determine whether settlement is possible to avoid a court case. *See id.*

By adding subsection (6), the legislature had to make corresponding changes to subsection (5). The amendments made to subsection (5) demonstrate that the jurisdictional language of subsection (1) was not intended to apply to all of the subsections of section 24–10–109.

Prior to the 1986 amendments, subsection (5) provided the following:

(5) Any action brought pursuant to this article shall be commenced within the time period provided for that type of action in articles 80 and 81 of title 13, C.R.S.1973, relating to limitation of actions, or it shall be forever barred.

§ 24–10–109(5), 10 C.R.S. (1982). After the 1986 amendments, that subsection read as follows:

(5) Any action brought pursuant to this article shall be commenced within the time period provided for that type of action in articles 80 and 81 of title 13, C.R.S. ~~1973~~, relating to limitation of actions, or it shall be forever barred; EXCEPT THAT, IF COMPLIANCE WITH THE PROVISIONS OF SUBSECTION (6) OF THIS SECTION WOULD OTHERWISE RESULT IN THE BARRING OF AN ACTION, SUCH TIME PERIOD SHALL BE EXTENDED BY THE TIME PERIOD REQUIRED FOR COMPLIANCE WITH THE PROVISIONS OF SUBSECTION (6) OF THIS SECTION.

Ch. 71, sec. 9, 1986 Colo. Sess. Laws 873, 878, Act approved April 29, 1986 (capital letters indicate new material added to existing statute; dashes through words indicate deletions from existing statutes and such material not part of the Act).

The insertion of the new language permits a plaintiff to comply with the provisions of subsection (6), namely, the ninety-day "cooling off" period, without the risk that the applicable statute of limitations would run during that time. Hence, the legislature made it clear that not every situation in derogation of the provisions of the subsections of section 24–10–109 would "forever bar" an action.

Significantly, subsection (5) reiterates the "forever barred" language, that, by RTD's reckoning, automatically applies to that subsection by the very terms of subsection (1). If the "jurisdictional prerequisite" language of subsection (1) is read to apply to all of section 24–10–109, there would be no reason for the reiteration of the "forever barred" language in subsection (5), the only arguably "jurisdictional" provision—other than subsection (6)—found in the entire section. Thus, the language of subsection (5) contradicts a literal interpretation of subsection (1).

Moreover, foreclosing claims on the basis of a tardy filing is conceptually different from foreclosing claims on the basis of a premature filing. It is easy to see the prejudice caused to a public entity like RTD by a late notice of claim given more than 180 days after an accident. Evidence may be lost making it difficult for RTD to assess the merits of the claim and to prepare its defense. *See Woodsmall,* 800 P.2d at 68. Expedient notification also enables a public entity to remedy a potentially dangerous situation promptly. *Id.* In contrast, no harm is caused by the premature filing of a lawsuit which could be held in abeyance or dismissed without prejudice while the parties try to settle their dispute. It is harsh and illogical to apply the same strict—and fatal—repercussion to two such different acts.

Thus, we conclude that the language of subsection (1), that "[c]ompliance with the *provisions of this section* shall be a jurisdictional prerequisite," must be the result of a drafting error. The legislative history and the text of the amended statute when read as a whole support the proposition that the jurisdiction language was meant to apply only to the 180–day notice provision found in

subsection (1) rather than to all of the other subsections found in section 24–10–109. In sum, the word "section" should read "subsection."

## B.

Finally, equity and principles of fairness demand an opposite result from that proposed by RTD. A construction turning the ninety-day "cooling off" period into an obstacle course will not encourage settlement but, rather will lead to the dismissal of meritorious cases. Our analysis is informed by federal employment discrimination law, specifically, Title VII of the Civil Rights Act of 1964, 42 U.S.C. sections 2000e to 2000e–17 (1994), which requires that a plaintiff wait before filing a complaint in court until a "right to sue" letter is issued by the Equal Employment Opportunity Commission (EEOC). It is appropriate to analogize between Title VII and the CGIA because both provide rights of action to injured individuals and both acts encourage the early resolution of disputes through an administrative process.

A "right to sue" letter is issued if the EEOC either dismisses the claim or does not take any action on the claim within 180 days of its filing. Once a "right to sue" letter is issued, a claimant has ninety days in which to file a Title VII claim in federal court.[13] A "right to sue letter" is akin to the ninety-day waiting period presently before us.

A similar scenario arises in the Title VII context as the one here when a plaintiff files a complaint prior to receiving a "right to sue" letter from the EEOC. Courts that have addressed this situation have called this a failure to comply with statutory requirements or conditions precedent rather than a failure to comply with jurisdictional require-

ments. *See, e.g., Perkins v. Silverstein,* 939 F.2d 463, 469–70 (7th Cir.1991) ("we have consistently held that the administrative filing requirements imposed under Title VII and the ADEA are not 'jurisdictional prerequisites' which pose an absolute bar to suit, but rather 'conditions precedent,' similar to statutes of limitations, which are subject to equitable modification"); *Gooding v. Warner–Lambert Co.,* 744 F.2d 354, 358 (3d Cir. 1984) (a "right to sue letter" "is not a 'jurisdictional' requirement in the constitutional sense, but rather a statutory requirement designed to give the administrative process an opportunity to proceed before a lawsuit is filed."). This has been the treatment since *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), in which the Supreme Court held that filing a timely charge with the EEOC is "not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes,* 455 U.S. at 393, 102 S.Ct. at 1132 (footnote omitted).

In many cases, the EEOC does issue a "right to sue" letter some time after the complaint has been filed but before the court addresses the motion to dismiss. In those instances, courts have afforded the plaintiff an opportunity to cure by amending his or her complaint to reflect the changed circumstances, *i.e.,* compliance with statutory requirements. *See Perkins,* 939 F.2d at 471 ("the receipt of that letter after the complaint had been filed, but before it had been dismissed, effectively cured the deficiency in the original complaint"); *Jones v. American State Bank,* 857 F.2d 494, 499–500 (8th Cir. 1988) (the "receipt of a right-to-sue notice is a condition precedent to a filing of a Title VII claim, curable after the action has com-

---

**13.** 42 U.S.C. § 2000e–5(f)(1) (1994) provides in relevant part that:

> If a charge is filed with the [Equal Employment Opportunity Commission] pursuant to subsection (b) of this section, is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case

> involving a government, government agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge....

**1196**

menced"). Alternatively, the prematurely filed claims can be dismissed without prejudice with leave to refile once the EEOC has issued a "right to sue" letter.

The rationale for this treatment is twofold. First, if there is no prejudice to the defendant as a result of the premature filing, there is no reason to cut the plaintiff off. Second, since the purpose of the waiting period prior to the issuance of the "right to sue" letter is to permit the agency to attempt a conciliation process before the plaintiff resorts to the courts, and if such process has not been stymied by the premature filing, the purpose of the waiting period has not been undermined. *See Edwards v. Occidental Chem. Corp.*, 892 F.2d 1442, 1445 n. 1 (9th Cir.1990) ("A Title VII complainant may file an action prior to receiving her right to sue letter, provided there is not evidence showing that the premature filing precluded the state from performing its administrative duties or that the defendant was prejudiced by such filing.").

Here, it appears that RTD neither was prejudiced by Lopez's premature filing nor was it precluded from performing its internal process of evaluating Lopez's claims and assessing whether or not to settle with him. Therefore, Lopez's PIP claim should not have been dismissed with prejudice by the trial court. Rather, Lopez should be permitted to refile his PIP claim once he either receives notice from RTD denying his PIP claim or the ninety-day period has expired, whichever occurs first.

### IV.

For the foregoing reasons, we reverse the court of appeals on that portion of its decision pertaining to Lopez's negligence claim and affirm the court of appeals on other grounds on that portion of its decision pertaining to Lopez's PIP claim. We return the case with directions to remand it to the trial court for findings of fact and appropriate disposition on the personal service issue and for reinstatement of the PIP claim.