KOURLIS, Justice.
In this case, the People appeal a decision by the court of appeals vacating Daniel P. Yascavage's conviction for the crime of tampering with a victim or witness by criminal solicitation.[1] The court of appeals reversed the conviction for insufficient evidence because it concluded that section 18-8-707, C.R.S. (2004) (the "tampering statute"), requires proof that the victim or witness with whom the defendant tampered had been legally summoned to a proceeding. We granted certiorari in People v. Yascavage, 80 P.3d 899 (Colo.App.2003) to determine whether section 18-8-707, requires that the victim or witness with whom the defendant allegedly tampered was legally summoned and whether the general assembly intended "legally summoned" to mean "subpoenaed" or "subject to legal process.[2]
Section 18-8-707 does not require a vietim or witness to be "legally summoned" or subject to any legal process when the defendant is charged under subsections (1)(a) or (1)(c) of the statute. We do conclude, however, that when a defendant is charged under subsection (1)(b), the plain meaning of the statute requires that the victim or witness has been legally summoned to an official proceeding. Consistent with our precedent and the statute, we construe "legally summoned" to mean that the witness be under some obligation to the court to appear and testify but not necessarily be under subpoena. We therefore hold that when the prosecution charges the defendant with a violation of section 18-8-707(1)(b), it must present evi-denee that the defendant attempted to induce a witness or victim to absent themselves from a proceeding to which he or she had been "legally summoned." The prosecution failed to present such evidence in this case. Therefore, we affirm the court of appeals' decision vacating the tampering by criminal solicitation conviction.
I. Facts and Procedural History
Larriane Collier and Daniel P. Yascavage met in May of 1999. After several months of an "on-again-off-again" relationship, Collier sought to terminate the relationship and obtained a restraining order against Yascavage in April, 2000. Yascavage continued contacting Collier until he was arrested on charges of harassment and domestic violence in May, 2000.
*1088 While Yascavage was in custody awaiting trial he telephoned a friend and said the charges against him might be dropped if someone "got to" Collier and she failed to show up for court. The Adams County Sheriffs office recorded this telephone conversation. Yascavage was charged with criminal solicitation to tamper with a witness or vie-tim. See § 18-2-801, C.R.S. (2004); § 18-8-707, C.R.S. (2004).
Jury trial commenced on March 12, 2001 on three counts of harassment by stalking,[3] three counts of violation of a restraining order,[4] and criminal solicitation to tamper with a victim or witness. Collier testified against the defendant at trial but there is no evidence that she was under subpoena at the time. The trial court instructed the jury on the elements of criminal solicitation and the elements of tampering with a witness or vie-tim as it pertains to section 18-8-707(1)(b) as follows:
[That the defendant ... intentionally attempted without bribery or threats ... to induce a witness or victim or a person who he believed was to be called as a witness in any official proceeding ... to absent herself from any official proceeding to which she had been legally summoned.
On March 14, 2001, the jury returned guilty verdicts on one count of harassment by stalking, two counts of violation of a restraining order, and eriminal solicitation to commit tampering with a witness or victim. Yasca-vage was sentenced to two years imprisonment on the tampering count, to be served consecutively to the sentences imposed on the other counts.
Yascavage appealed each of his convictions. With respect to his tampering convietion, the defendant argued that the evidence was insufficient to sustain the conviction because the prosecution presented no evidence to the jury that Collier had been "legally summoned" as required by section 18-8-707.
In a published opinion, the court of appeals agreed, vacating the tampering conviction and holding that neither the mere presence of the victim at trial nor the information listing Collier as a potential witness would permit the jury to conclude that she was legally summoned.
We granted certiorari to decide whether the tampering statute requires proof that the witness or victim was legally summoned to an official proceeding and whether the general assembly intended "legally summoned" in the context of the tampering statute, to mean "subject to legal process." We now hold that section 18-8-707 does require that the victim or witness be legally summoned when the defendant is prosecuted under section 18-8-707(1)(b) and that the general assembly intended "legally summoned" in that subsection to mean that the witness have some obligation to the court to appear.
II. Analysis
A. History of the Tampering Statute
In 1963, the Colorado legislature defined a new crime of tampering. See § 40-8-605, C.R.S. (1963) (1971 Perm. Cum.Supp.). The purpose of the crime was to punish any attempt to induce another to testify falsely or otherwise to subvert the administration of justice. People v. Moyer, 670 P.2d 785, 791 (Colo.1938); Model Penal Code $ 241.6 emt 1. Subsequently, the tampering statute became part of Title Eighteen. § 18-6-605, (1973) (1978 Repl.Vol. 8). Most recently, the legislature repealed and re-enacted the tampering statute as part of the Victim and Witness Protection Act of 1984. See ch. 122 see. 4, § 18-8-701, 1984 Colo. Sess. Laws 499, 502. The language of the tampering statute remained largely unchanged through this period of time. Accordingly, comments following the adoption of section 40-8-605 and cases construing section 18-8-605 are relevant in interpreting the modern provision.
Colorado's tampering statute was modeled after Michigan proposal section 5020,[5] which was in turn derived from the Model Penal Code section 241.6. See § 40-8-605 emt. *1089 The drafters of the Model Penal Code sought to deter conduct that would affect the integrity of the criminal justice system by protecting against those who would seek to undermine the veracity and cooperation of witnesses and informants MPC § 241.6 emt. 1. Section 241.6 of the Model Penal Code dealt with tampering, retaliation, and bribery of witnesses and informants. The Michigan code dealt with intimidation, bribery, coercion or threats against witnesses separately from tampering. Michigan Code §§ 5005, 5015. Section 5020 was intended to apply to the "less sinister means" of impeding the administration of justice through improper contact with witnesses; such as use of general argument or pleading to persuade a prospective witness to withhold information on the stand or disobey a subpoenas. Mich. Rev.Crim.Code § 5020 emt. Both model laws focused on the defendant's subjective intent to subvert the administration of justice by improperly inducing a person to refrain from cooperating with the authorities. We interpret section 18-8-707 against that historical backdrop.
B. Statutory Interpretation
In construing a statute, our goal is to determine and give effect to the intent of the legislature and adopt the statutory construction that best effectuates the purposes of the legislative scheme. See Reg'l Transp. Dist. v. Lopez, 916 P.2d 1187, 1192 (Colo.1996), Bynum v. Kautzky, 784 P.2d 785 (Colo.1989). Basic principles of statutory interpretation guide us. First we look to the language of the statute itself. Martinez v. Badis, 842 P.2d 245 (Colo.1992). We read words and phrases in context and construe them literally according to common usage unless they have acquired a technical meaning by legislative definition. §§ 24-101, 2-4-212, C.R.S. (2004); People v. J.J.H., 17 P.8d 159 (Colo.2001). Absent some ambiguity in the language of the statute, we do not resort to any further rules of statutory construction. People v. Cooper, 27 P.3d 348 (Colo.2001). However, if the language is ambiguous, we may rely on other factors such as legislative history, the consequences of a given construction, and the end to be achieved by the statute. § 2-4-2083, C.R.S. (2004), Schubert v. People, 698 P.2d 788, 798-94 (Colo.1985).
C. The Language of the Statute
Yascavage's conviction turns on our interpretation of one subsection of the statute only. However, the issue on certiorari addresses the statute as a whole, and we therefore begin by reviewing section 18-8-707 in its entirety.
Section 18-8-707 identifies the class of persons the legislature intended to protect, when such persons would be protected, and from what actions these persons would be protected. The introductory provision of the tampering statute provides:
A person commits tampering with a witness or victim if he intentionally attempts without bribery or threats to induce a witness or victim or a person he believes is to be called to testify as a witness or victim in any official proceeding or who may be called to testify as a witness to or victim of any crime to [do one of the following].
§ 18-8-707(1), C.R.S. (2004). The Model Penal Code section 241.6 referenced "witnesses" and "informants" only. Colorado chose to refer to "witnesses" and "victims" and adopted an expansive definition of "witness" encompassing a much broader class than proposed by the Model Penal Code.
"Witness" means any natural person:
(a) Having knowledge of the existence or non-existence of facts relating to any crime;
(b) Whose declaration under oath is received or has been received as evidence for any purpose;
(c) Who has reported any crime to any peace officer, correctional officer, or judicial officer;
(d) Who has been served with a subpoena issued under the authority of any court in this state, of any other state, or of the United States; or
(e) Who would be believed by any reasonable person to be an individual described in paragraph (a), (b), (c), or (d) of this subsection (2).
*1090 § 18-8-702(2), C.R.S. (2004)(emphasis added). The general assembly has also explicitly defined "victim." In the context of the tampering statute, a victim is any person against whom any crime has been perpetrated or attempted. § 18-8-702(1). Clearly then, the general assembly intended the tampering statute to provide protection to a broad class of persons.
The nexus, however, is that the defendant must believe the person is or will be a participant in any official proceeding. Section 18-8-501, C.R.S. (2004) defines official proceeding as "a proceeding heard before any legislative, judicial, administrative, or other government agency, or official authorized to hear evidence under oath, including any magistrate, hearing examiner, commissioner, notary, or other person taking testimony or depositions in any such proceedings."
In the context of section 18-8-707, tampering thus occurs when a defendant intentionally attempts to interfere with someone he believes is to be called, or who may be called, to testify in any proceeding covered by seetion 18-8-501. The purpose of the "official proceeding" language is to tie the defendant's conduct to the ultimate harm to be avoided: namely, obstruction of justice. The drafters of the Model Penal Code commented that the prosecution need not establish that a proceeding was in fact pending but merely that the defendant held the belief it was. It was their intention "to eliminate quibbling invited by laws requiring that a proceeding or investigation actually be pending." Model Penal Code § 241.6 emt. 2.
As a whole, the introductory provision of section 18-8-707 offers far-ranging protection to a broad class of persons. However, the subsections of the statute are clear in the conduct they prohibit. An individual may not induce or attempt to induce a victim or witness to: (a) testify falsely or unlawfully withhold testimony; (b) absent himself from a proceeding to which he has been legally summoned; or (c) avoid legal process. Each subsection of 18-8-707 presents an independent objective prohibited under the tampering statute. Therefore, to sustain a conviction under section 18-8-707 the subject of the defendant's influence must be a person encompassed by the introductory provision and the defendant's objective must be prohibited in subsection (1)(a),(b), or (c) of seetion 18-8-707.
We turn then to the subsection under which the defendant was charged and convicted: section 18-8-707(1)(b). That subsection prohibits an attempt to induce a protected person to "[albsent himself from any official proceeding to which he has been legally summoned." § 18-8-707(1)(b).
Unlike the other subsections, subsection (1)(b) invokes protection only for a witness or victim who has been "legally summoned." Legally summoned has neither been defined by the general assembly nor by the drafters of the Model Penal Code. In the absence of a statutory definition, we seek first to give words their plain and ordinary meaning. § 2-4-101, C.R.S. (2004).
Although a "summons" most often refers to a court order notifying the defendant of a civil case against him, "summons" generally includes a legal notice requiring a person to appear in court.[6] Black's law dictionary defines summons as a writ directing a sheriff to summon a defendant to appear in court or a writ or process commencing the plaintiffs action and requiring a person to appear in court as a juror or witness. Black's Law Dictionary 1477 (8th ed.2004). Summons has often been interpreted to be synonymous with "process." See, eg., Ackermann v. Berriman, 61 Misc. 165, 114 N.Y.S. 987, 940 (City Ct.1908); Hiatt v. Tompkins, 176 Va. 82, 10 S.E.2d 489 (1940); Coman v. *1091 Williams, 78 N.D. 560, 50 N.W.2d 494 (1951). But see Roth v. Nash, 19 Wash.2d 781, 144 P.2d 271 (1948); State ex rel. Walling v. Sullivan, 245 Wis. 180, 18 N.W.2d 550 (1944). Black's defines process as "the proceeding in any action or prosecution, a summons or writ, esp. to appear or respond in court. -also. termed judicial process; legal process." Black's Law Dictionary 1242 (8th ed.2004).
The general assembly considers orders, writs, subpoenas, warrants or other notices requiring the appearance of a witness all to be forms of summons. §§ 16-9-201, 16-9-301, CRS. (2004). However, "subpoena" and "summons" are not synonymous. In Colorado, the legislature has distinguished between the two on several occasions. Where a subpoena is required, the legislature explicitly identifies that requirement. See §§ 13-1-113; 19-3-508; 16-9-101; 16-9-201; 16-9-301, CRS. (2004). Similarly, court rules explicitly identify the requirement for a subpoena when applicable. See CRCP. 5b); C.RC.P. 45; Crim. P. 9. So while it is clear that a summons is not limited to a subpoena, the statutes do not give us clear guidance regarding the level of process required to suffice for "legally summoned." In the face of that ambiguity, we look to our principles of statutory construction, such as legislative history, consequences of a given construction and overall legislative intent.
When viewing the statute as a whole, it is clear that the general assembly intended to define victim and witness broadly, but it is also clear that it intended "legally summoned" to have some meaning.
The "legally summoned" language of seetion 18-8-707 originated from Model Penal Code section 241.6:
(1) Tampering. A person commits an offense if, believing that an official proceeding or investigation is pending or about to be instituted, he attempts to induce or otherwise cause a witness or informant to: ... (d) absent himself from any proceeding or investigation to which he has been legally summoned.
In contrast to the Colorado statute, the Model Penal Code specifically covered informants and witnesses: those who are under subpoena, may be subpoenaed, or may be called to testify. The Colorado statute covers a broader class of persons at the outset. Witnesses, victims, informants and persons the defendant perceives to be among those classifications are all protected under 18-8-707. Comment two to the Model Penal Code specifically questions whether "witness" is limited to a person under subpoena, but clarifies that the term should be given a more expansive meaning. The drafters further comment that paragraph (d) may appear only to apply to witnesses, creating a substantive gap between the intent of section (1) and the application of (d), but go on to explain that "an informant becomes a witness with the issuance of a legal summons." MPC § 241.6 cmt. 2.
Hence, the Colorado general assembly did not adopt the Model Penal Code's restrictive language, but rather used a broad introductory provision and then more narrow subsections.
Some states have eliminated the term "legally" prior to summons. See, e.g., N.Y. Penal Law § 215.10 (2004), Ark.Code Aun. § 5-58-110 (2003), Model Penal Code § 241.6 emt 2. The result is that any request to appear may be included, whether by order of the court or request of a party, potentially even a letter or a phone call.
Conversely, when called upon to interpret the Oregon statute, the Oregon court of appeals concluded that the term "legally summoned" requires a subpoena. See Or.Rev. Stat. § 162.285 (20083). In State v. Martin, 95 Or.App. 170, 769 P.2d 203 (1989), the defendant, an attorney, was representing a man in a driving while intoxicated prosecution. The attorney was convicted of tampering with a witness after he spoke to the officer who had arrested his client and asked "if there was any way he could keep from reissuing the case" in exchange for two hundred and fifty dollars. Id. at 204. The court reversed his conviction because the arresting officer had not been served with a subpoena when the defendant induced him to absent himself from trial. Id. at 206.
We are guided by the expansive definition of witness or victim in the introductory portion of the statute, and by the overall legisla *1092 tive intent. However, we must also give effect to each subsection. In interpreting "legally summoned," we do not read it strict, ly to mean that a subpoena is the only acceptable form of process. Were the legislature to have intended that outcome, it would presumably have used the word subpoena. On the other hand, we do assign some meaning to the use of the term "legally summoned" and therefore conclude that it means some action taken by the official tribunal that obligates a witness to appear at an official proceeding.[7]
Again, we stress that neither subsection (1)(a) nor subsection (1)(c) require such legal process in order to trigger the crime. Only subsection (1)(b) requires that element.
III. Application
Yascavage was charged with criminal solicitation to tamper with a witness. The evidence shows that while Yascavage was in jail awaiting trial on charges of harassment by stalking and violation of a restraining order, he contacted a friend and asked him to "get to" the victim so the charges would be "throw[n] out" when she failed to appear. The defendant was aware Collier was a potential witness against him. Thus, there was evidence that Yascavage attempted to stop the victim from attending an official proceeding.
However, the jury was instructed as to the elements of section 18-8-707(1)(b) only.[8] Thus, to find defendant guilty of tampering with a witness, the jury would have been required to conclude that he attempted to cause the victim to absent herself from an official proceeding to which she had been legally summoned.
We have concluded that "legally summoned" means that the witness must be under some obligation to the court to appear. Here, the only potential evidence was that Collier's name appeared on the charging document as a potential witness. Even that evidence was not presented to the jury in support of the charges. Because there was no evidence that Collier was under any legal obligation to appear at the proceeding, there was a failure of proof on one element of the charge.
IV. Conclusion
Section 18-8-707, while including expansive definitions of covered victims or witnesses, nonetheless delineates prohibited conduct of a defendant in three subsections. Subsection (1)(b) of the statute, the one that Yascavage was charged with violating, contains a requirement that the victim or witness with whom the defendant tampers be under legal summons to appear at an official proceeding. Although legal summons does not mean subpoena for purposes of this statute, it does mean that the victim or witness be under a legal obligation, imposed by the tribunal, to appear. Here, there was no evidence that Collier was under such a legal obligation to appear, and thus the conviction fails for lack of proof on one element.
We affirm the court of appeals' decision to vacate the tampering by criminal solicitation conviction.
Justice COATS dissents.

. The defendant was charged with criminal solicitation to achieve tampering, sections 18-2-301, 18-8-707, C.R.S. (2004), because he attempted to induce someone else to contact the victim/witness. The solicitation aspect of the case is not implicated in the question we address on certio-rari.

. We granted certiorari on the issues of "Iwlhether section 18-8-707(1), C.R.S. (2004) (the '[HJampering statute'), requires proof that the witness or victim was legally summoned to an official proceeding;" and "[wlhether the [gleneral {alssembly intended legally summoned," in the context of the [fJampering statute, to mean 'subject to legal process.""

. § 18-9-111, C.R.S. (2004)

. § 18-6-803.5, CR.S. (2004)

. Michigan State Bar, Michigan Revised Criminal Code (Final Draft Sept. 1967) ("Michigan code").

. Different jurisdictions have interpreted "summons" to mean different things. See Buffkin v. Alum-Co Nat., Inc., 331 F.2d 96 (D.C.Cir.1963) (letter directing the defendant to appear at a federal office was not a summons within the meaning of the Uniform Act to Secure the Attendance of Witnesses); State v. Hofmann, 895 S.W.2d 108 (Mo.App.1995) (phone call was sufficient to "summon" jurors selected from qualified list); Duffield v. Denver & R.G.R. Co., 5 Colo.App. 25, 36 P. 622 (1894) (writ of replevin can be "summons" so long as it complies with governing procedural statute); Whitney v. Blackburn, 17 Or. 564, 21 P. 874 (1889) (summons is a process issued from the court requiring the persons to whom it is addressed to attend the court for the purpose therein stated).

. We do not limit our application of section 18-8-701(1)(b) to a court. Rather, it applies to "any official proceeding," which includes civil administrative proceedings. An agency's statute and/or rules of procedure will likely bear on how a witness or victim is "legally summoned" to attend its proceedings. For example, the agency statute or rules might require the submitter of pre-filed written testimony to appear at the administrative hearing and be available for cross-examination, or the statute or rules might provide for the agreement of parties to determine which persons will appear at the hearing.

. The pertinent portion of the jury instruction was read as follows: "The elements of the crime of tampering with a witness or victim are: One, that the defendant; two, in the State of Colorado at or about the date and place charged; three, intentionally; four, attempted without bribery or threats; five, to induce a witness or victim or a person who he believed was to be called as a witness or victim in any official proceeding; six, to absent herself from any official proceeding to which she had been legally summoned." (Jury Instruction No. 14).