JEFFERSON COUNTY HEALTH SER-
VICES ASSOCIATION, INC.; Jefferson
County Department of Health and Envi-
ronment; and the Board of County
Commissioners of the County of Jeffer-
son, Petitioners,

v.

Barbara J. FEENEY, Respondent.

No. 97SC667.

Supreme Court of Colorado,
En Banc.

Sept. 14, 1998.

Fowler, Schimberg & Flanagan, P.C., Tim-
othy P. Schimberg, Brian E. Widmann, Den-
ver, for Petitioners.

Beem & Mann, P.C., Clifford L. Beem, A. Mark Isley, Denver, for Respondent.

Gary E. Hanisch, Walsenburg, for Amicus Curiae Las Animas–Huerfano Counties Health Department.

Justice KOURLIS delivered the Opinion of the Court.

We granted certiorari to review the court of appeals' conclusion in *Feeney v. Jefferson County Health Services Ass'n, Inc.*, 949 P.2d 103 (Colo.App.1997) that the notice requirements of the Governmental Immunity Act (GIA), section 24–10–109, 7 C.R.S. (1998), are satisfied when a claimant sends notice of a claim against a county health department to the board of county commissioners and not to the county board of health. We conclude that the county board of health, not the board of county commissioners, is the governing body of a county health department and is therefore entitled to notice under the Governmental Immunity Act. Accordingly, we reverse and remand to the court of appeals for consideration of the remaining issues in light of this ruling.

## I.

On February 8, 1994, Respondent Barbara Feeney slipped and fell on an icy sidewalk outside of a medical clinic in Lakewood, Colorado. The clinic was operated by the Jefferson County Department of Health and Environment (the Health Department). Feeney filed claims of negligence against three defendants: Jefferson County, the Health Department, and the Jefferson County Health Services Association.

On March 29, 1994, Feeney sent notice of her claim by registered mail to the Jefferson County Board of County Commissioners (the County Commissioners) and the Jefferson County Attorney. She also sent notice to various officials of the City of Lakewood. Feeney did not send notice to any entity, other than the County Commissioners, of her claim against the Health Department.[1]

The Health Department filed a motion to dismiss claiming that its governing body was the Jefferson County Board of Health, and that Feeney had failed to submit notice of the claim to that body within 180 days of the injury. The district court denied the motion, and held that the County Commissioners "could fairly be said to be a 'governing body' for the County Health Department" under the GIA.

The court of appeals affirmed the district court and held that the Health Department, established by resolution of the County Commissioners, was not an independent legal entity separate and ·distinct from the county. *See Feeney*, 949 P.2d at 106. Accordingly, the court held that the Health Department was not entitled to a separate notice of the claim, and that notice to the County Commissioners satisfied the GIA. *See id.*

We now hold that the Jefferson County Board of Health, not the County Commissioners, is the governing body of the Health Department and that notice to the County Commissioners did not suffice to notify the Health Department of the pendency of the claim.

## II.

■ As a matter of public policy and in order to encourage the provision of essential public services, the General Assembly has limited the circumstances in which a public entity may be liable for injuries to a member of the public. *See* § 24–10–102, 7 C.R.S. (1998). Among the constraints of the GIA are the notice requirements imposed upon a potential claimant. Specifically, when an individual suffers an injury caused by a public entity or public employee, that individual must notify the entity of the existence of the claim within 180 days of discovery of the injury. *See* § 24–10–109(1), 7 C.R.S. (1998). Compliance with this provision is necessary to confer subject matter jurisdiction. *See id.; Trinity Broad. v. City of Westminster,* 848 P.2d 916, 923 (Colo.1993). Subsection (3) of this statute provides:

If the claim is against the state or an employee thereof, the notice shall be filed with the attorney general. If the claim is against any other public entity or an em-

1. The County Attorney does not represent the Health Department.

ployee thereof, the notice shall be filed with the governing body of the public entity or the attorney representing the public entity. Such notice shall be effective upon mailing by registered mail or upon personal service.

§ 24–10–109(3), 7 C.R.S. (1998).

■ The purpose of the notice is not to set a trap for the unwary, but rather to allow a public entity to promptly investigate and remedy dangerous conditions, to foster prompt settlement of meritorious claims, to make necessary fiscal arrangements to cover potential liability, and to prepare for defense of claims. *See, e.g., Woodsmall v. Regional Transp. Dist.*, 800 P.2d 63, 68 (Colo.1990); *Antonopoulos v. Town of Telluride*, 187 Colo. 392, 398, 532 P.2d 346, 349 (1975).

■ We have previously observed that the statute plainly requires litigants to file the notice with one of two persons: the governing body of the public entity or the entity's attorney. *See Brock v. Nyland*, 955 P.2d 1037, 1040 (Colo.1998). The statute thus insures that the " 'governing body' or its 'attorney' be directly involved, advised, and notified of potential litigation." *Id.* at 1041. Notification to any other person is insufficient under the clear language of the GIA. *See id.* at 1040–41.

### III.

The question before us then is not what the statute mandates, but rather what body governs the Health Department. To answer that question, we begin with an overview of the structure of our state public health system.

Article 1 of title 25 creates a three-tiered public health system in Colorado. *See* §§ 25–1–101 to –1112, 8 C.R.S. (1998). The first and overarching tier is the State Department of Public Health and Environment. *See* §§ 25–1–101 to –125, 8 C.R.S. (1998). The state health department is responsible for, among other things, investigating statewide epidemics, compiling statewide vital statistics, establishing state health standards, licensing and inspecting hospitals, and monitoring and controlling other state health issues. *See* § 25–1–107, 8 C.R.S. (1998). This part 1 of article 1 also creates a state board of health charged with overseeing the day-to-day operations of the state health department and setting its policies, rules, regulations, and standards. *See* §§ 25–1–103 and – 108, 8 C.R.S. (1998).

Part 5 of article 1 sets out the next tier of the system in the form of county and district departments of health. *See* §§ 25–1–501 to – 516, 8 C.R.S. (1998). The Jefferson County Department of Health and Environment was established pursuant to part 5. The duties of the part 5 health departments are similar to those of the state health department, and these entities work with the state in implementing statewide health policies and procedures. *See* § 25–1–506, 8 C.R.S. (1998). A part 5 health department may cover a single county or it may overlap into two or more adjacent counties comprising a district. *See* § 25–1–501, 8 C.R.S. (1998). Part 5 also creates a board of health for county or district health departments with powers and duties similar to the state board for overseeing the operation of county or district health departments. *See* § 25–1–507, 8 C.R.S. (1998). A part 5 health department may bring its own civil or criminal action to enforce public health laws. *See* § 25–1–512, 8 C.R.S. (1998). Its board of health may, as Jefferson County's board has, employ its own attorney to defend actions brought against it. *See* § 25–1–512, 8 C.R.S. (1998).

The final tier of the system is created by part 6 of article 1, which decrees that boards of county commissioners shall act as local boards of health for their respective counties and shall attend to various health issues of local concern, such as home health care services, fees for county health services, and the abatement of certain nuisances such as dead animals. *See* §§ 25–1–601 to –667, 8 C.R.S. (1998). Should the county commissioners of a particular county decline to establish a part 5 department, then the part 6 board itself must implement the state health department's objectives.

Part 5 health departments are aligned with the state health department and have more responsibility than a part 6 board. A part 5 department's alignment with the state is apparent not only in the department's duties

and responsibilities but also in the method of appointing health officers. The state health department dictates the necessary qualifications for a public health administrator appointed by a part 5 department. *See* § 25–1–505(1), 8 C.R.S. (1998). The state is not involved, however, in establishing qualifications for health officers appointed by a part 6 board. *See* § 25–1–610, 8 C .R.S. (1998).

Thus, part 1 and part 5 health departments together carry out statewide health mandates and policies. Part 6 boards, comprised of a board of county commissioners, are separate from the state and handle situations of more local concern.[2]

Our case law has already addressed one aspect of the division between a part 5 health department and the county in which it operates. In *Johnson v. Jefferson County Board of Health,* 662 P.2d 463 (Colo.1983), we considered the position of a part 5 health department relative to both the state and the county. By statute, a part 5 health department's board is to appoint a public health administrator to "serve at the pleasure of the board." § 25–1–501(1), 8 C.R.S. (1998); *see also Johnson,* 662 P.2d at 471 (interpreting this phrase to allow discharge "at any time without cause or formal procedure"). The question in *Johnson* was whether county personnel rules, requiring notice and a hearing prior to termination of a county employee, superseded the board of health's right to discharge the public administrator at will. In analyzing the statutory scheme, we concluded that both the county and the county health department are separate political subdivisions of the state. *See id.* Because the county health department was a political subdivision of the state with its own statutory rights and mandate, it could not abdicate its authority in favor of the county rules. *See id.* While in *Johnson* we did not decide the specific question before the court today, we did recognize the fundamental structure of a part 5 health department as being a subdivision of the state, and thus not under the direct auspices of the county.

Accordingly, the statutes that govern the operation of the public health system in Colorado dictate that a part 5 health department is a legal entity, separate and distinct from the board of county commissioners.

## IV.

Even so, Feeney argues that the board of county commissioners governs the Health Department and that notice to the commissioners is therefore sufficient. We must therefore consider what it means to "govern" an entity for purposes of the GIA. The county commissioners of a particular county (or, in the case of a district, a combination of counties) are vested with discretion to create a part 5 health department, appoint its board, and if necessary or appropriate, dissolve the department. *See* §§ 25–1–501, – 502, –510, 8 C.R.S. (1998). Feeney contends that possession of the power to create and dissolve makes the county commissioners the "ultimate" governing body of a part 5 health department.

On the other hand, the Health Department, and amicus curiae, Las Animas–Huerfano Counties District Health Department, assert that all powers of governance significant to the GIA, i.e., defense of actions, policy making, enforcement, implementation and day-to-day operations, are vested with the part 5 board of health. We agree with the Health Department.

First, the type of power that the board of health exercises over the Health Department comports more closely with the commonly understood meaning of the term "govern." *See People v. Guenther,* 740 P.2d 971, 975 (Colo.1987) (stating that statutory language must be given its commonly accepted and understood meaning). Black's Law Dictionary defines the word "govern" as "[t]o direct and control the actions or conduct of, either by established laws or by arbitrary will; to direct and control, rule, or regulate, by authority." *Black's Law Dictionary* 695 (6th ed.1990). The ability to create and dissolve, standing alone, implicates a different

---

**2.** If a part 6 department fails to enforce state health laws, the state health department may sue the local board of county commissioners, acting as the local board of health. *See* § 25–1–602, 8 C.R.S. (1998). By contrast, no similar provision contemplates a suit by the state health department against a part 5 department.

form of power than directing, controlling, ruling, and regulating.

■ Most importantly, the powers of governance granted to a board of health clearly coincide with the purposes of the GIA. One of the purposes of the GIA is to provide public entities an opportunity to conduct a prompt investigation, and, if necessary, to remedy a dangerous condition. *See Fritz v. Regents of Univ. of Colo.*, 196 Colo. 335, 338, 586 P.2d 23, 25 (1978). It is the board of health, not the county commissioners, that is charged with the responsibility to secure and maintain facilities such as the sidewalk at issue in this case. *See* § 25-1-507(1)(a), 8 C.R.S. (1998).

Feeney contends that, in her case, a prompt investigation and remedy would not have been important because the ice was likely to have melted by the next day. We do not, however, interpret the purposes of the GIA on an ad hoc basis, and the governing body of a public entity does not change depending upon the factual nature of the accident or claim.

■ An additional purpose of the GIA is to allow a public entity to prepare a defense and/or work toward settlement of a claim. *See Fritz,* 196 Colo. at 338, 586 P.2d at 25. Indeed, for defense of claims, the board of health employs its own attorney, who is not the same attorney who represents the county. *See* § 25-1-512, 8 C.R.S. (1998). In order to address the purposes of the GIA, as well as its clear language, either the board of health or its attorney was entitled to notice of Feeney's claim.

The statutes are sufficiently clear to alert an injured claimant of the existence and authority of the board. *See* §§ 25-1-502, 507 8 C.R.S. (1998) (stating at section 507(1)(a) that the board shall "provide, equip, and maintain suitable offices and all necessary facilities"). Thus, the board of health is not, as Feeney claims, an "obscure" or "esoteric" entity, the existence or significance of which she could not possibly have divined.

In her brief, Feeney points out that the City of Lakewood sent a return letter to her attorney advising him that Lakewood did not own or maintain the property upon which the accident occurred. The County Commissioners sent her no such letter and she argues that this leads to one of two conclusions: (1) that the Commissioners actually notified the Health Department, and the Health Department is relying on a "technicality"; or (2) that the Commissioners "conveniently failed to notify" the Health Department in order to set up a defense under the GIA.

There are several flaws in this argument. First, the County Commissioners are in fact a party to this lawsuit. Hence, their receipt of a notice would not in any way alert them that a plaintiff might be intending to notify another entity through them. Second, there is no evidence that the board of health received actual notice of the claim within the time period. Third, there is no claim here that the County Commissioners intentionally misled Feeney into believing that her notice was effective as to the Health Department.

Although it can sometimes work inequitable results, the GIA notice requirement is clear and the duty to comply with it falls upon the claimant, not upon the governmental entity.

## V.

Finally, Feeney contends that, at a minimum, both the County Commissioners and the Board of Health can be viewed as governing bodies of the Health Department for purposes of the GIA; and, thus, notice to the County Commissioners should suffice.

The concept of governance carries different connotations in different contexts. At some level, the County Commissioners may be described as having powers of governance over the Health Department. The GIA, however, is designed in a practical manner to identify the person or entity responsible for fixing the problem or dealing with a claim. In this context, only one entity can effectively and efficiently act as a governing body, and the statute does not contemplate more than one governing body. Section 24-10-109(3) requires notice to "be filed with *the* governing body of the public entity or *the* attorney representing the public entity." § 24-10-109(3), 7 C.R.S. (1998)(emphasis added); *see also Brock v. Nyland,* 955 P.2d

1037, 1040 (Colo.1998)(noting that "the GIA, by its plain language, anticipates that a litigant against a public entity will file notice with one of two persons").

Again, we must remember that the purpose of the notice is to permit the claim to be investigated, to permit the condition to be fixed, and to permit resources to be set aside against any liability. The only governing body with authority to undertake any of those tasks is the board of health—not the County Commissioners.[3]

## VI.

■ Based upon the structure of a part 5 Health department as aligned with the state rather than the county, the particular governing duties of a board of health viewed in light of the purposes of the GIA, and the fact that only one entity may be designated properly as a governing body, we conclude that the board of health is the governing body of a health department.[4] We thus reverse the court of appeals' ruling that Feeney's notice to the County Commissioners satisfied the requirements of the GIA with respect to the Health Department, and remand for consideration of the remaining issues.

Justice MARTINEZ concurs and specially concurs, and Justice BENDER joins in the concurrence and special concurrence.

Justice MARTINEZ concurring and specially concurring.

The majority holds that the county board of health, rather than the board of county commissioners, is the governing body of a county health department, and is therefore entitled to notice under section 24–10–109(3), 7 C.R.S. (1997), of the Governmental Immunity Act ("GIA"). *See* maj. op. at 1002. In

light of this holding, the majority concludes that Feeney failed to comply with the notice requirements of GIA with respect to the county health department. *See id.* at 1006. I agree with both of these conclusions. I write separately, however, to reiterate my view that a plaintiff need only substantially comply with the notice requirements of section 24–10–109(3). Because the plaintiff failed to do so in this case, I join the judgment of the majority.

## I.

In *Regional Transportation District v. Lopez*, 916 P.2d 1187 (Colo.1996), we recognized that, when the General Assembly intends a subsection of section 24–10–109 to be subject to a strict compliance standard, it includes language to that effect. *See id.* at 1194 ("If the 'jurisdictional prerequisite' language of subsection (1) is read to apply to all of section 24–10–109, there would be no reason for the reiteration of the 'forever barred' language in subsection(5)"). We also found that, because the phrase "jurisdictional prerequisite" appears only in subsection (1), the strict compliance standard mandated by the use of this phrase applies only to that subsection. *See id.* at 1194–95. Accordingly, because subsection (6) of section 24–10–109 contains no language mandating strict compliance, we held that a plaintiff need only substantially comply with the requirements of subsection (6). *See id.* at 1196 (dismissal of claim unwarranted where there was no evidence that plaintiff failed to substantially comply with the provision).

Subsection (3) of section 24–10–109, like subsection (6), contains no language suggesting that the General Assembly intended strict compliance with its provisions. As a

---

**3.** Under Feeney's argument, claimants against a multi-county or district health department would either be required to notify the county commissioners of each county involved, or arbitrarily choose one county for notification purposes. The former procedure is incorrect because there can only be one governing body. The latter procedure would create inconsistent and inefficient results. Rather, it is clear that in such a situation, it is the district board of health, not the commissioners of the various counties, that governs a district health department.

**4.** Feeney also argued that even if the board of health is the governing body, she substantially complied with the GIA by providing notice to the County Commissioners. This argument is foreclosed by our recent opinion in *Brock v. Nyland*, 955 P.2d 1037, 1040 (Colo.1998)(rejecting substantial compliance as the standard for analysis under section 24–10–109(3)).

consequence, and as explained more thoroughly in my dissent to *Brock v. Nyland*, 955 P.2d 1037, 1048–50 (Colo.1998) (Martinez, J., dissenting), *Lopez* compels the conclusion that a plaintiff need only substantially comply with the requirements of subsection (3).

## II.

Although I believe that a substantial compliance analysis should apply to section 24–10–109(3), I concede that the majority's application of a strict compliance standard to this case is consistent with *Brock. See* maj. op. at 1003 ("Notification to any other person [besides the governing body or attorney of a public entity] is insufficient under the clear language of the GIA."). Contrary to the *Brock* majority, however, I believe our analysis of a plaintiff's attempts to comply with section 24–10–109(3) should not end after finding that the plaintiff failed to strictly comply. Rather, we should determine whether the public entity has met its burden of proving that the plaintiff failed to substantially comply with the statute. *See Brock*, 955 P.2d at 1050–51 (Martinez, J., dissenting).

Because the majority opinion in *Brock* forecloses such an approach, it is unnecessary in this opinion to set forth a full analysis of whether Feeney's efforts constitute substantial compliance with section 24–10–109(3). It is sufficient to express my conclusion that, upon the facts of this case, Feeney's notification of the board of county commissioners did not constitute substantial compliance with her duty to notify the county board of health. Accordingly, I join the judgment of the majority.

Justice BENDER joins in this concurrence and special concurrence.