Laura FINNIE, Petitioner,

v.

**JEFFERSON COUNTY SCHOOL DISTRICT R–1, Respondent.**

No. 02SC598.

Supreme Court of Colorado, En Banc.

Dec. 1, 2003.

Tamas Viski–Hanka, Denver, Colorado, Attorneys for Petitioner.

Caplan and Earnest LLC, Colleen A. O'Laughlin, Derek H. Kiernan–Johnson, Boulder, Colorado, Attorneys for Respondent.

Justice MARTINEZ delivered the Opinion of the Court.

Petitioner challenges the court of appeals' decision, *Finnie v. Jefferson County School District R–1*, No. 01CA1433 (Colo.App. July 25, 2002), which affirmed the trial court's grant of a motion to dismiss the petitioner's tort action against the Jefferson County School District. We must determine whether a plaintiff's filing of notice with a public entity's Risk Management Department, given allegations that the Risk Management Department represented that such filing was proper, can comply with the requirements of the Governmental Immunity Act (GIA) to serve notice upon a public entity.[1] *See* § 24–10–109(3), 7B C.R.S. (2003).

We hold that to determine whether the plaintiff fulfilled the requirement contained in section 24–10–109(3), the trial court must consider principles of agency and equity, the intent and purposes of the notice statute, and whether the Risk Management Department misrepresented that the filing of notice was proper. Attempting to apply these principles to the case before us, we conclude that the record contains insufficient facts to determine whether the plaintiff complied with the statute. Thus, we further hold that trial

courts must decide all issues of immunity before trial, regardless of whether the immunity issue is jurisdictional. To do so, trial courts may conduct *Trinity* hearings if necessary to determine the relevant facts.

## I. Facts and Procedural Background

Laura Finnie, Petitioner, suffered injuries when she fell headfirst through an opening in the floor of a high school auditorium stage into an orchestra pit below. Finnie, a high school student, was crossing the dimly lit stage to perform with her school band when she fell eight to ten feet through the unmarked opening into the orchestra pit, breaking a ladder with her head as she fell. She alleges that she suffered multiple injuries from the fall, including brain damage resulting in epilepsy, a concussion, and the loss of the ability to read.

In an affidavit submitted to the trial court, Finnie's counsel claims that when preparing to file an action against the Jefferson County School District (the "School District"), he telephoned the School District's Risk Management Department to inquire where he must serve notice of claims as required by the GIA. The affidavit states that a receptionist referred the attorney to two Risk Management Department employees, one of whom returned the attorney's call. The affidavit further states that the employee informed the attorney that the Department was authorized to receive the statutory notice for the Jefferson County School Board (the "School Board"). In the affidavit, the attorney further alleges that, relying on this information, he then submitted a notice of claim to the Risk Management Department. Clearly framed as a "notice of claim," the letter appears to comply entirely with the GIA's notice requirements, except that the attorney sent it to the Risk Management Department rather than the School Board or its attorney as required by the GIA. *See* § 24–10–109(2)–(3), 7B C.R.S. (2003).

---

1. Specifically, we granted certiorari on the issue of "whether the Risk Management Department of the Respondent School District had apparent authority to accept Petitioner's 180–day notice under the Colorado Government Immunity Act, ("Statutory Notice"), where a specific employee of the School District was put in the position to represent that it may do so, and where it is within the Risk Management Department's ordinary duties to otherwise accept notice of claims."

Upon receiving the notice, the Risk Management Department sent a letter to Finnie's attorney acknowledging receipt of the notice of claim. The letter further stated that "[w]ithout admitting or denying the timeliness or the sufficiency of notice, [the Risk Management Department had] taken an investigation into this matter." Subsequently, Finnie filed this tort action against the School District.

The School District moved to dismiss the complaint for failure to state a claim on the basis that the plaintiff failed to send notice of the claim to the School Board or its attorney as required by the GIA. *See* § 24–10–109(3). The trial court granted the School District's motion to dismiss without a hearing on the matter. The trial court first stated that it must adjudicate section 24–10–109(3) disputes under a "strict compliance" standard, as required by *Brock v. Nyland*, 955 P.2d 1037 (Colo.1998). The trial court reasoned that, under this standard, statutory notice is proper only when filed with either the School Board or its attorney, as required by the GIA. *See* § 24–10–109(3) (requiring filing of notice with the governing body of a public entity or its attorney). The trial court then determined that the "strict compliance" standard did not allow for agency arguments and that Finnie could not rely on the "oral assertions and 'apparent authority' " of Risk Management Department employees because the attorney had access to controlling case law requiring service on the governing body or its attorney.

On appeal, the court of appeals affirmed. *Finnie v. Jefferson County Sch. Dist. R–1*, No. 01CA1433, slip op. at 6 (Colo.App. July 25, 2002). The court of appeals observed that the trial court had determined under C.R.C.P. 12(b)(5) that the complaint was insufficient, but believed that the trial court had considered matters outside the pleadings. Noting that a court must convert a motion to dismiss to one for summary judgment when "information outside of the complaint is submitted to the trial court," the

court of appeals applied a summary judgment standard on review. *Id.* at 4–5 (citing *Dunlap v. Colorado Springs Cablevision, Inc.*, 829 P.2d 1286 (Colo.1992)). The court of appeals recognized that the School Board could delegate its authority to receive statutory notice, contrary to the trial court's statement. The court of appeals, however, held that Finnie failed to show that the Board or its attorney delegated apparent authority to the Risk Management Department because she did not establish that the principal, the School District, created apparent authority through words or conduct.[2] *Id.* at 5–6. Thus, the court rejected Finnie's argument that the School District conferred apparent authority on the Department's employee and affirmed the trial court's decision.

## II. Standard of Compliance

■ We begin our analysis by examining the trial court's application of a "strict compliance" standard to section 24–10–109(3). After reviewing the various opinions of the court in *Brock*, we conclude that each supports a substantial compliance standard.

The GIA establishes governmental tort immunity from actions filed against public entities or their employees and then provides exceptions and waivers under which individuals may maintain such actions. *See* §§ 24–10–105 to –106, 7B C.R.S. (2003). Under the GIA, an injured person seeking damages from a public entity or employee must provide written notice of the claim within 180 days of discovery of the injury. § 24–10–109(1), 7B C.R.S. (2003). The GIA then sets forth a series of criteria that the notice must satisfy. *See* § 24–10–109(2)–(6).

This court has interpreted one of the GIA's notice provisions as a jurisdictional prerequisite for suits against public entities and other notice provisions as presenting statutory defenses to claims. *See Brock v. Nyland*, 955 P.2d 1037, 1042–43, 1045–46 (Colo.1998) (Scott, J.; Kourlis, J., concurring); *Reg'l Transp. Dist. v. Lopez*, 916 P.2d 1187, 1193

2. The court of appeals applied the rule that, under the doctrine of apparent authority, a principal is liable for an agent's actions when the principal, through his words or conduct, causes a third party to believe that the principal author-

ized the agent's actions. *See Townsend v. Daniel, Mann, Johnson & Mendenhall*, 196 F.3d 1140, 1146 (10th Cir.1999) (citing *Nation v. City & County of Denver*, 685 P.2d 227, 229 (Colo.App. 1984)).

(Colo.1996). We characterized section 24–10–109(1), which requires injured parties to submit written notice within 180 days of the discovery of an injury, as a jurisdictional prerequisite to suit that therefore requires strict compliance with its terms. *Lopez*, 916 P.2d at 1192–95; *East Lakewood Sanitation Dist. v. Dist. Court*, 842 P.2d 233, 235–36 (Colo.1992). In contrast, we characterized section 24–10–109(3) as providing a statutory defense to claims rather than creating a jurisdictional prerequisite to suit. *Brock*, 955 P.2d at 1042–43, 1045–46; *Lopez*, 916 P.2d at 1193.

Subsection three of the statute requires litigants to file notice with either the governing body of the public entity or the entity's attorney. It states:

> If the claim is against the state or an employee thereof, the notice shall be filed with the attorney general. If the claim is against any other public entity or an employee thereof, the notice shall be filed with the governing body of the public entity or the attorney representing the public entity. Such notice shall be effective upon mailing by registered mail or upon personal service.

§ 24–10–109(3).

Though we have struggled to articulate the extent to which a plaintiff must comply with section 24–10–109(3) to fulfill its notice requirement, we have not completed this task. *See Brock*, 955 P.2d at 1037 (holding, in a plurality opinion, that section 24–10–109(3) "mandates more than substantial compliance"); *Woodsmall v. Reg'l Transp. Dist.*, 800 P.2d 63 (Colo.1990) (suggesting that a substantial compliance standard applies to section 24–10–109(3)). Most recently, in *Brock*, the court produced three separate opinions regarding the necessary level of compliance. *Brock*, 955 P.2d at 1037. Comparing the three separate opinions of the *Brock* court, we conclude the reasoning of all three opinions agree that determinations of compliance with section 24–10–109(3) must consider principles of agency and equity, as well as the intent and purposes of the statute. Therefore, we reject any reasoning in *Brock* that requires a strict compliance standard.

In the lead opinion, Justice Scott, joined by one other justice, may have appeared to argue that section 24–10–109(3) requires strict compliance. Specifically, he stated that "the plain language of section 24–10–109(3) mandates more than substantial compliance" and rejected any interpretations of prior case law that endorsed a substantial compliance standard. *Brock*, 955 P.2d at 1043 (rejecting an interpretation of *Reg'l Transp. Dist. v. Lopez*, 916 P.2d 1187 (Colo.1996)). He grounded his position in both the text of the statute and a concern that a more expansive standard would result in the ability to file notice with too many persons. Justice Scott first argued that "substantial compliance cannot be applied in a manner consistent with the plain language of the statute." *Id.* at 1042. He then explained that if the court articulated a substantial compliance standard, "so that the filing of notice with a claims adjuster in the [public entity's] claims department has the same effect as a filing with the governing body or attorney," the court could not control which parties may receive notice. *Id.*

Although he advocated a more stringent standard than substantial compliance, Justice Scott also indicated that strict compliance with section 24–10–109(3) was not always required. He listed a series of considerations that, if present in *Brock*, might have yielded a different outcome. These considerations are inconsistent with a strict compliance standard, which requires absolute compliance and cannot be waived. *See Woodsmall*, 800 P.2d at 67. For example, he stated that the governing body of a public entity could delegate its authority to receive statutory notice to an agent, but noted that the plaintiff in *Brock* failed to advance such an argument. *Brock*, 955 P.2d at 1044. Similarly, he noted that the plaintiff did not argue waiver, estoppel, or that the public entity's governing body or its attorney had actual notice of the claims. *Id.* Furthermore, he noted that the plaintiff "was not acting upon representations by [the public entity] that his filing with the claims department met the notice requirements of the GIA." *Id.* Finally, he observed that the plaintiff in *Brock* "was not acting pro se and his attorney had ample opportunity during the interaction with the claims depart-

ment to ascertain whether or not the claim had been forwarded to the [governing body] or its attorney." *Id.* Although the plaintiff did not advance these arguments, Justice Scott indicated that his standard of compliance allowed the court to consider them. Thus, because he advocated that the court take into account equitable arguments and other considerations, Justice Scott appeared to champion a standard less stringent than strict compliance.

Justice Kourlis, in a concurring opinion also joined by one other member of the court, called for determinations of compliance on a case-by-case basis. *Id.* at 1046 (Kourlis, J., concurring). She argued that the determination of compliance should not focus on either "substantial versus strict compliance or substantial versus impliedly strict compliance," *id.,* nor "the jurisdictional or non-jurisdictional import of the provision." *Id.* at 1045. Rather, she advocated that compliance should "turn[] on the language and intent of the provision." *Id.* Specifically, she called the court to "look to the language and intent of the statute and also take into account any relevant equitable considerations." *Id.* at 1046. She considered, for example, that the governing body of the public entity had not "taken any action or made any representation which would constitute a waiver or create an estoppel argument." *Id.* at 1047. Ultimately, Justice Kourlis only agreed with Justice Scott that the plaintiff failed to comply with the provisions of the subsection.

In a dissenting opinion joined by two other justices, I argued that a substantial compliance standard applies to section 24–10–109(3). The opinion reasoned that substantial compliance is attained when the plaintiff makes a "good faith effort to satisfy the notice requirements" and when any errors or omissions do not prejudice the public entity. *Id.* at 1050 (Martinez, J., dissenting) (quoting *Woodsmall,* 800 P.2d at 68–69). The opinion explained that no prejudice occurs if the "error does not prevent the public entity from investigating and remedying any dangerous conditions, making adequate fiscal arrangements to meet any potential liability, or preparing a defense to the claim." *Id.* (citing *Woodsmall,* 800 P.2d at 68).

Since *Brock,* we have not further articulated what constitutes compliance with the GIA's notice provision. In *Jefferson County Health Services Ass'n v. Feeney,* 974 P.2d 1001 (Colo.1998), we only stated that section 24–10–109(3) requires litigants to file notice with one of two persons: the governing body of the public entity or the entity's attorney. *Id.* at 1003 (citing *Brock,* 955 P.2d at 1040). We did, however, explain that the purposes behind the GIA's notice provisions are "not to set a trap for the unwary." *Id.* We explained that the notice provision instead functions "to allow a public entity to promptly investigate and remedy dangerous conditions, to foster prompt settlement of meritorious claims, to make necessary fiscal arrangements to cover potential liability, and to prepare for defense of claims." *Id.* Although these cases explain the purposes and function of the notice provision, they do not further clarify the compliance necessary to satisfy section 24–10–109(3). In addition, our very recently announced decisions in *University of Colorado v. Booth,* 78 P.3d 1098 (Colo.2003), and *Tidwell v. City & County of Denver,* No. 02SC532, 83 P.3d 75, 2003 WL 22533402 (Colo. Nov. 10, 2003), do not further address this issue. Thus, the three opinions in *Brock* provide the only basis for determining the necessary standard of compliance.

■ With our fractured vote in *Brock,* we not only were unclear about the degree of compliance necessary, but we failed to agree on common terminology. However, despite the inconsistencies among the opinions in *Brock,* all of the members of the court agreed on some basic underlying principles. The entire *Brock* court agreed that in some circumstances, service on the statutorily designated entity is not necessary and that principles of agency and equity apply. *See Brock,* 955 P.2d at 1044, 1047, 1050–51 (Scott, J.; Kourlis, J., concurring; Martinez, J., dissenting). Moreover, a majority of the court either specifically stated or implied that in determining whether a plaintiff complied with section 24–10–109(3), the intent and purposes of the statute are critical. *Id.* at 1047, 1050–51 (Kourlis, J., concurring; Martinez, J., dissenting). Thus, a determination

of whether a plaintiff complied with section 24–10–109(3) should consider whether the purposes of the statute were satisfied. Generally, the purposes of the statute include avoiding prejudice to the governmental entity, encouraging settlement, and providing public entities the opportunity to investigate claims, remedy conditions, and prepare defense of claims. *Feeney,* 974 P.2d at 1003.

Consistent with these purposes, the GIA's notice provision acts to help the governmental entity manage claims. Although governmental immunity protects the government from unlimited liability, it can act as an "inequitable doctrine" with harsh consequences for plaintiffs. *See* § 24–10–102, 7B C.R.S. (2003). Allowing public entities to mislead plaintiffs about how to meet the requirements of the notice provision, and then to assert the affirmative defense of noncompliance, is beyond the legitimate purposes of the GIA's notice provision. We reiterate that the GIA's notice provision should not act as a "trap for the unwary." *See Feeney,* 974 P.2d at 1003. Therefore, interpretations of the GIA should not permit public entities to manipulate the notice provision to dodge otherwise proper suits.

Today we attempt to clarify that the purposes behind the statute are critical when determining whether a plaintiff complied with section 24–10–109(3). Furthermore, we stress that governmental entities may not mislead potential claimants by incorrectly indicating that they have complied with section 24–10–109(3). We recognize that case-by-case determinations of compliance, which consider principles of agency and equity, the purposes of the statute, and concerns of protecting plaintiffs from misrepresentations by governmental entities, are required. Thus, without necessarily endorsing previous determinations of whether compliance with section 24–10–109(3) was substantial, we recognize that the standard we explain today is best described as substantial compliance, and to the extent that *Brock* suggests a different standard for section 24–10–109(3), we overrule.

### III. Procedural Considerations

■ In this case, we cannot determine whether Finnie substantially complied with the notice requirement contained in section 24–10–109(3). The trial court did not determine the facts relevant to substantial compliance both because it applied a strict compliance standard that did not allow for agency arguments and because it resolved the case on a C.R.C.P. 12(b)(5) motion for failure to state a claim. Having concluded that the trial court applied the wrong standard of compliance, we now address the procedure the trial court used to dismiss Finnie's claim.

■ We hold that the GIA requires the trial court to definitively resolve all issues of immunity before trial, regardless of whether the issues have been classified as jurisdictional. Trial courts must employ the procedures used in *Trinity Broadcasting of Denver v. City of Westminster,* 848 P.2d 916 (Colo.1993), and its progeny to resolve issues of immunity, even when such issues are not jurisdictional. Accordingly, trial courts may conduct *Trinity* hearings to determine the facts necessary to definitively resolve all disputed issues of immunity, including those deemed non-jurisdictional. Therefore, we reverse the court of appeals' judgment and remand for proceedings consistent with this opinion.

### A. Procedure to Resolve Issues of Immunity

The trial court concluded that Finnie did not strictly comply with the notice requirement in section 24–10–109(3) and dismissed Finnie's case for failure to state a claim, pursuant to C.R.C.P. 12(b)(5). Because the trial court considered matters outside the pleadings in issuing its ruling, however, the court of appeals reviewed the trial court's determination under a summary judgment standard. *See* C.R.C.P. 12(b)(5). After reviewing the text and purposes of the GIA, we conclude that such procedures are inappropriate for resolving issues of immunity.

■ We first examine the text of section 24–10–108, 7B C.R.S. (2003), of the GIA and determine that it requires trial courts to resolve all issues of immunity before trial. Because summary judgment procedures sometimes fail to definitely resolve issues of

fact before trial, we conclude that summary judgment procedures pursuant to C.R.C.P. 12(b)(5) are inconsistent with the requirement of section 24–10–108. Next, we acknowledge that C.R.C.P. 12(b)(1) is limited to jurisdictional issues. We conclude that the GIA dictates a procedure identical to C.R.C.P. 12(b)(1) but not limited to jurisdictional issues. Thus, trial courts must resolve all issues of immunity before trial through the procedures employed in *Trinity Broadcasting of Denver v. City of Westminster*, 848 P.2d 916 (Colo.1993), and its progeny, regardless of whether the notice compliance at issue is a jurisdictional prerequisite. Similarly, we allow trial courts to hold evidentiary hearings, or "*Trinity* hearings," to determine whether plaintiffs fulfilled the GIA's notice requirements in section 24–10–109, even when such requirements do not present jurisdictional bars to suit.

The GIA contains a requirement that trial courts must weigh evidence to resolve issues of sovereign immunity, such as compliance with the statute's notice requirements, before trial. Section 24–10–108 states:

> If a public entity raises the *issue of sovereign immunity* prior to or after the commencement of discovery, *the court shall suspend discovery*, except any discovery necessary to decide the issues of sovereign immunity, *and shall decide such issue on motion.*

§ 24–10–108 (emphasis added). In *Trinity*, we interpreted this provision to require trial courts to resolve factual disputes regarding issues of immunity prior to trial.[3] *Id.* at 924–25. We explained that the text of section 24–10–108 requires "that issues of sovereign immunity are to be decided by the trial court if raised before trial." *Id.* at 924.

To implement the requirements of section 24–10–108, we reasoned in *Trinity* that courts should resolve sovereign immunity issues through motions to dismiss for lack of subject matter jurisdiction pursuant to C.R.C.P. 12(b)(1), rather than through motions to dismiss for failure to state a claim pursuant to C.R.C.P. 12(b)(5). *See id.* at

924–25. Unlike C.R.C.P. 12(b)(5), C.R.C.P. 12(b)(1) allows a trial court to weigh evidence and make findings of fact regarding the existence of its jurisdiction. *Id.* at 925. Therefore, C.R.C.P. 12(b)(1) allows the trial judge to definitively resolve disputed factual issues relating to immunity before trial begins, in accordance with the mandate of section 24–10–108. In contrast, C.R.C.P. 12(b)(5) requires a court to convert a motion to dismiss into a motion for summary judgment if the court considers matters outside the pleadings. *See* C.R.C.P. 12(b)(5).

Unlike motions under C.R.C.P. 12(b)(1), summary judgment proceedings following C.R.C.P. 12(b)(5) motions are inconsistent with the mandate in section 24–10–108 that the trial court resolve immunity issues before trial. When material facts are in dispute, summary judgment requires the jury to resolve such facts at trial. *See* C.R.C.P. 56(c). Therefore, we concluded in *Trinity* that factual issues of compliance with notice requirements should be resolved by motions to dismiss pursuant to C.R.C.P. 12(b)(1). *Trinity*, 848 P.2d at 924. Furthermore, consistent with C.R.C.P. 12(b)(1), we permitted trial courts to "allow limited discovery and conduct an evidentiary hearing" to resolve questions of fact. *Id.*

Today we apply our reasoning in *Trinity* that summary judgment procedures following C.R.C.P. 12(b)(5) motions are inconsistent with the mandate contained in section 24–10–108 to resolve issues of immunity. We hold that because section 24–10–108 requires trial courts to resolve issues of immunity before trial, it requires a procedure that mirrors C.R.C.P. 12(b)(1) but also addresses nonjurisdictional issues.

The factual issue in *Trinity* arose under the 180–day notice requirement contained in section 24–10–109(1). Since *Trinity*, we have distinguished the requirements in the various subsections of section 24–10–109, classifying subsection 24–10–109(1) as a jurisdictional bar to suit and subsection 24–10–109(3) as merely presenting a statutory defense to

---

**3.** Specifically, the parties in *Trinity* disputed when a 180–day period began, during which the plaintiffs had to file statutory notice of claims

pursuant to section 24–10–109(1). *Trinity*, 848 P.2d at 924.

claims. *See Brock v. Nyland,* 955 P.2d 1037, 1042–43, 1045–46 (Colo.1998) (Scott, J; Kourlis, J., concurring); *Reg'l Trans. Dist. v. Lopez,* 916 P.2d 1187, 1192–95 (Colo.1996). Our case law has not specifically addressed the procedure through which courts should resolve issues of compliance with the non-jurisdictional subsections in section 24–10–109. To resolve this issue, we again look to section 24–10–108 and its requirement that trial courts must resolve all issues of immunity before trial.

Section 24–10–108, through its mandate that trial courts resolve all immunity issues before trial, does not distinguish between jurisdictional and non-jurisdictional immunity issues. *See Trinity,* 848 P.2d at 924; § 24–10–108. In that regard, section 24–10–108 differs from C.R.C.P. 12(b)(1) procedures, which only apply to resolve jurisdictional issues. *See* C.R.C.P. 12(b)(1). Yet section 24–10–108 mandates a procedure identical to a C.R.C.P. 12(b)(1) motion to resolve factual issues regarding compliance with the GIA's notice provisions, except that use of this procedure does not depend on whether the notice provision at issue presents a jurisdictional bar.

We therefore hold that the procedure used in *Trinity* and its progeny applies to all issues of immunity under the GIA, regardless of whether the provision at issue is jurisdictional. This procedure is identical to that mandated by C.R.C.P. 12(b)(1) without the jurisdictional limitation. Trial courts should now resolve factual issues of immunity in *Trinity* proceedings before trial upon a motion by the governmental entity that the plaintiff failed to comply with section 24–10–109.

■ We clarify that the *Trinity* procedure that courts must use to resolve issues of immunity includes discovery, ruling without hearings, and affording parties the opportunity to request *Trinity* hearings. We base this conclusion on the text of section 24–10–108. Section 24–10–108 allows courts to conduct "any discovery necessary" when deciding issues of immunity. § 24–10–108. We stated in *Trinity* that courts must hold evidentiary hearings when facts relating to immunity are in dispute. *Trinity,* 848 P.2d at

924–26; *Tidwell v. City & County of Denver,* No. 02SC532, 83 P.3d 75, 85–86, 2003 WL 22533402, at *11 (Colo. Nov. 10, 2003). We have also noted that "[w]hen there is no evidentiary dispute, the trial court *may* rule without a hearing" and on the pleadings alone. *Tidwell,* 83 P.3d at 85–86, 2003 WL 22533402, at *11 (emphasis added). Today, however, we hold that courts have discretion to conduct *Trinity* hearings to develop facts relating to immunity issues when such facts are not directly disputed.

If we did not require courts to resolve all issues of immunity through *Trinity* procedures but instead allowed courts to decide such issues through motions under C.R.C.P. 12(b)(5) and summary judgment procedures, we would create an inefficient and asymmetrical situation. Factual issues arising under the GIA's jurisdictional provisions would be resolved by the judge before trial in one discreet proceeding, but disputed issues arising under the non-jurisdictional provisions, such as section 24–10–109(3), would proceed to trial. For example, a judge would resolve an issue regarding the 180–day notice requirement in subsection (1) through a *Trinity* hearing. However, if a factual issue exists regarding whether a plaintiff filed that notice with the proper entity, as in this case, the second question of immunity would be resolved at trial. Rather than resolving immunity questions in separate proceedings, the interests of efficiency and judicial economy compel trial courts to determine all factual issues regarding immunity prior to trial in a single proceeding. For this reason, we have tacitly approved trial courts' use of such *Trinity* procedures in the past to resolve factual issues of compliance with all subsections of section 24–10–109. *See, e.g., Booth v. Univ. of Colo.,* 64 P.3d 926, 927 (Colo.App. 2002) (acknowledging that the trial court conducted an evidentiary hearing to resolve both questions of compliance with section 24–10–109(3) and issues arising under section 24–10–106(1)(c), 7B C.R.S. (2003)), *aff'd, Univ. of Colo. v. Booth,* 78 P.3d 1098 (Colo.2003).

Moreover, our holding today comports with both the GIA's purpose and general principles of sovereign immunity. Through the GIA, the General Assembly sought to

protect the government from "excessive fiscal burdens," which include not only the costs of judgments against the government but the costs of unnecessary litigation as well. *See* § 24–10–102. Therefore, the GIA acts "to shield public entities and employees from being forced to trial or exposed to the other burdens of extended litigation, when the viability of the proceedings is dependent on the resolution of an essentially legal question." *Bresciani v. Haragan,* 968 P.2d 153, 157 (Colo.App.1998). When determining whether a notice of claim complied with the terms of the statute, the disputed facts usually "are separate from those determinative of liability and can be resolved early in the litigation process, without significant discovery." *Id.* at 158. Thus, to subject a public entity to a "meaningless" trial defeats the GIA's purpose of protecting public entities from liability. *See id.*

We therefore hold that trial courts must resolve issues of immunity before trial through the procedures used in *Trinity,* regardless of whether the provision in question is jurisdictional or non-jurisdictional. Furthermore, we emphasize that when resolving issues of compliance with the notice provisions contained in section 24–10–109, courts may conduct *Trinity* hearings to develop full factual records and shall allow the parties latitude in discovering evidence necessary to determine the immunity issues.

### B. Procedure upon Remand

In the present case, the trial court, relying on prior case law, did not resolve the issue of Finnie's compliance with section 24–10–109(3) as a motion to dismiss pursuant to C.R.C.P. 12(b)(1), but rather granted a motion to dismiss for failure to state a claim under C.R.C.P. 12(b)(5). Because we only now specify the procedure that courts must follow when resolving all issues of compliance with section 24–10–109, we remand this case to the court of appeals with directions to return it to the trial court to afford the defendant the opportunity to file a *Trinity* motion to resolve the issue of compliance.

In the subsequent proceedings, Finnie bears the burden of demonstrating that notice was properly filed so that the suit may proceed; however, we have described this burden as "relatively lenient." *See Tidwell,* 83 P.3d at 86, 2003 WL 22533402, at *12. Although Finnie must carry this burden, our narrow construction of statutes granting governmental immunity requires that Finnie "be afforded the reasonable inferences of [her] evidence" in proving compliance with section 24–10–109(3). *Id.* at 85–86, at *11. The evidence Finnie presented in the current proceeding may yield several "reasonable inferences." We again emphasize that trial courts have discretion to conduct *Trinity* hearings to accept and weigh evidence to determine whether a plaintiff fulfilled the GIA's notice requirements. *See Trinity,* 848 P.2d at 925. We also note that in such hearings, we have directed trial courts to "allow the parties latitude in discovering or introducing evidence" that tends to prove or disprove a plaintiff's compliance with the notice provisions. *See Tidwell,* 83 P.3d at 85–86, 2003 WL 22533402, at *11 (citing *Trinity,* 848 P.2d at 924).

In this proceeding, Finnie offered evidence from which one can draw multiple "reasonable inferences," specifically the alleged statements by the Risk Management Department employee and the letter sent to Finnie by the Risk Management Department acknowledging receipt of her notice of claim. Additionally, it may be necessary to develop some of the other relevant facts, such as the relationship between the School Board and the Risk Management Department, to determine factually whether an agency relationship existed or whether Finnie's notice fulfilled the purposes of the notice requirement. Although courts have discretion to conduct *Trinity* hearings, this procedure serves as a sometimes necessary tool for courts to resolve cases in which the facts presented raise multiple questions that require development before the court can determine whether the case should proceed.

Furthermore, our prior case law holds that a court should conduct a *Trinity* hearing when alleged facts are in dispute. *Tidwell,* 83 P.3d at 85–86, 2003 WL 22533402, at *11; *see Trinity,* 848 P.2d at 924–27. In proceedings after remand, a denial by the School District that Finnie complied with section 24–

10–109(3) may put some of Finnie's alleged facts at issue, even though the School District did not previously dispute facts that were irrelevant to the strict standard of compliance incorrectly applied by the trial court.

In this case, we are unable to resolve whether Finnie substantially complied with the notice provision in section 24–10–109(3). Instead, we can only conclude that the case arrived before us through procedures that we have now determined to have been incorrect and that the trial court applied the wrong standard. Therefore, a remand of this case is necessary to allow the parties to submit pleadings in accordance with the procedures outlined above and to properly explore and develop the facts necessary to determine whether the filing of notice was sufficient.

### IV. Conclusion

In sum, we hold that section 24–10–109(3) requires substantial compliance with its terms. Thus, courts should evaluate compliance on a case-by-case basis, considering principles of agency and equity, the purposes of the notice statute, and concerns of preventing governmental entities from misleading plaintiffs. We also hold that trial courts must resolve issues of compliance with the notice requirements set forth in section 24–10–109 before trial through *Trinity* procedures, regardless of whether the notice requirement is a jurisdictional bar to suit. Accordingly, we reverse the judgment of the court of appeals and remand this case to the court of appeals to return it to the district court for proceedings consistent with this opinion.