RAMIREZ, J.
Fernando Castillo appeals his judgment of conviction and sentence for unlawful compensation and official misconduct. We reverse the trial court’s denial of Castillo’s motion for judgment of acquittal as to count I, unlawful compensation, and affirm the denial as to count II, official misconduct.
Former Miami-Dade County police officer Castillo was accused of coercing sex from a motor vehicle driver, nineteen-year-old A.S., in lieu of arresting or ticketing her for driving under the influence of alcoholic beverages. Castillo was charged with unlawful compensation for the sexual conduct and official misconduct for intentionally falsifying official documents.
A jury convicted-Castillo of both charges and Castillo moved for a judgment of acquittal. The trial court denied the motion and sentenced Castillo to 56.25 months imprisonment to be followed by one year of probation. On the sentencing score-sheet, the court assessed 98 additional points to the sentencing guidelines score-sheet for which 80 points were assessed for sexual penetration and 18 points for possession of a firearm during the commission of the underlying offense.
I. The Testimony
At trial, A.S. testified that in the early morning hours of March 9, 2000, she was driving at approximately 55 miles per hour in a 40 mph zone. When she passed in front of a gas station, she saw Castillo illuminate his overhead lights and, over the car’s loudspeaker, he ordered her to pull over and produce her driver’s license. A.S. had been drinking heavily and had smoked a marijuana cigarette, so she thought she was going to be arrested. She stopped in front of a Burger King restaurant. As she walked over to Castillo’s patrol car, she slipped and had to catch herself on her car, to which Castillo remarked, “the party must have been good.” When she handed Castillo her driver’s license, he grabbed her wallet, and began to peruse through it. He was standing less than a foot away from A.S. The wallet contained a business card from a police officer. She explained that it belonged to her boyfriend.
Castillo requested that she follow him into the Burger King restaurant parking lot. After she had moved her car as ordered, they stood in the parking lot and spoke. Castillo was very friendly, as he kept smiling and touching her shoulder. Castillo then told her to follow him in her car, which she did. He led her to a nearby deserted warehouse area where he had vaginal intercourse with her. During the encounter, she did not say anything to him because she was scared and did not know what to do. He then told her that she was lucky he didn’t give her a ticket. He gave her his beeper number and they each drove off. Castillo gave her the impression that if she refused to have sex with him, he would either arrest her or give her a ticket for driving under the influence, but Castillo did not mention anything along the lines of DUI, and she could not recall if the sex-in-lieu-of-DUI idea originated after the fact from her friend or her friend’s father.
A.S. subsequently sought treatment at a rape center, and reported the incident first to the FBI and then to the Miami Dade Police Department.
Castillo testified that he pulled out of the gas station into A.S.’s lane of traffic. A.S. applied her brakes and waved him *308 over to her. They both stopped in the median. Castillo got out of the car, asked A.S. for her driver’s license, reviewed the driver’s license and returned it to her. He asked A.S. if anything was wrong, to which A.S. responded in the negative and stated that she was lost and needed directions to the Palmetto Expressway. Castillo directed her to the expressway and returned to his patrol car to drive away. A.S. stopped Castillo and asked him if they could talk a while longer. They then drove to a nearby Burger King restaurant where they parked them cars and spoke about personal matters, including marriage and family. Castillo detected the smell of alcohol on A.S.’s breath. He did not notice that she walked or spoke as if she was drunk. He told her that he had to return to work, gave her his beeper number, and arranged to meet her at a park at the end of his shift. He then drove to a gas station to use the bathroom, purchase a drink, and begin work on his activity worksheet. He returned to the police station for the remainder of his shift. When he left the station at the end of his shift, he met A.S. and had masturbatory sex with her. He never discussed DUI charges with her. During the encounter, he was in full uniform, and he wore a gun that was visible.
In the police department’s taped telephone call between Castillo and A.S., A.S. told Castillo that she believed that she was pregnant and Castillo expressed disbelief because he had not ejaculated inside of her. Both vehicles were also videotaped driving to and from the warehouse area. Castillo’s semen was later found in A.S.’s panties. A condom which A.S. had in her wallet prior to the sexual encounter was later reported missing.
Several police officers testified in this case. Hernandez, an officer with the Sexual Crimes Bureau, testified that A.S.’s former boyfriend called him to say that A.S. made up the allegations against Castillo. During Castillo’s interrogation at the police station, Castillo denied stopping A.S.’s car, exiting his patrol car or having sex with A.S. Morales, an officer with the Professional Compliance Bureau, testified that the taped communications between Castillo and the police dispatcher reflected that a traffic stop was conducted, but there was a gap in the transmission. Bermudez, another officer with the Sexual Crimes Bureau, testified that there was a discrepancy between Castillo’s work sheet, the restaurant surveillance video, and the dispatcher records as to the time Castillo conducted the vehicle stop.
Castillo did not record the encounter with A.S. in his daily activity work report. He also acknowledged that his daily log report mistakenly indicated that he was on patrol during the time in which he was speaking to A.S. in the parking lot.
II. Unlawful Compensation
Castillo asserts that the trial court erred in denying his motion for judgment of acquittal on the charge of unlawful compensation. In count I, Castillo was charged with placing A.S. in such a position that she was forced to engage in vaginal intercourse in lieu of his issuing her a ticket or arresting her for DUI. Section 838.016, Florida Statutes (1999), provides:
(1) It is unlawful for any person corruptly to give, offer, or promise to any public servant, or, if a public servant, corruptly to request, solicit, accept, or agree to accept, any pecuniary or other benefit not authorized by law, for the past, present, or future performance, nonperformance, or violation of any act or omission which the person believes to have been, or the public servant represents as having been, either within the official discretion of the public servant, *309 . in violation of a public duty, or in performance of a public duty.
In State ex rel. Grady v. Coleman, 133 Fla. 400, 183 So. 25, 31 (1938), the Florida Supreme Court stated that if the compensation is demanded “and there is a meeting of the minds on the part of the officer who is to be compensated or rewarded by his exaction or acceptance of the reward other than that allowed by law, and the party from whom it is exacted or accepted, then the statutes, supra, have been violated.”
A.S.’s own candid testimony belies any meeting of the minds, as reflected in the following exchange:
Q: Did you ever tell the FBI that he said you can either get a DUI or you can follow me or something to that, of that nature?
A: Yes, I did.
Q: Why did you tell her that?
A: I didn’t, I don’t think that was exactly what I said. Basically, I felt that everybody would be on his side — I didn’t know what I felt — I was being asked to do.
Q: Did he say that?
A: No. He didn’t. But who was going to believe me over a police officer.
Later, on cross-examination, A.S. testified as follows:
Q: He never suggested he was going to arrest you for DUI?
A: No.
Q: He never said anything about along the lines of DUI, the entire encounter, did he?
A: No.
Q: It was never any quid quo pro [sic] that he wouldn’t arrest you if you come with me, was there?
A: No.
The State was thus unable to show any meeting of the minds. At best, the prosecution only showed that in the mind of A.S., she thought that Castillo would arrest or ticket her if she did not have intercourse with him. But in the absence of any spoken understanding, Castillo could simply have thought that A.S. followed him voluntarily.
III. Official Misconduct
We find no merit in Castillo’s argument that the trial court also erred in not granting a judgment of acquittal on the charge of official misconduct. Castillo acknowledged that the daily activity report he prepared contained a few errors, but claimed that they had been mistakes. All the mistakes, of course, occurred around the time he was with A.S. The jury could reasonably reject his explanation. We thus conclude that after all conflicts in the evidence and all reasonable inferences have been resolved in favor of the verdict, there is substantial, competent evidence to support the verdict and judgment. See Tibbs v. State, 397 So.2d 1120, 1123 (Fla.1981).
IV. Conclusion
We reverse the conviction and sentence for unlawful compensation as charged in count I and affirm the conviction for official misconduct as charged in count II. Because we are reversing the conviction on count I, we need not reach Castillo’s claim of error on the sentencing guideline score-sheet.
Reversed in part, affirmed in part, and remanded.