877 So.2d 690 (2004)
STATE of Florida, Petitioner,
v.
Fernando CASTILLO, Respondent.
No. SC03-282.
Supreme Court of Florida.
April 22, 2004.
Rehearing Denied July 6, 2004.
*691 Charles J. Crist, Jr., Attorney General, and Consuelo Maingot and Andrea D. England, Assistant Attorneys General, Fort Lauderdale, FL, for Petitioner.
Bennett H. Brummer, Public Defender, and Harvey J. Sepler, Assistant Public Defender, Eleventh Judicial Circuit, Miami, FL, for Respondent.
CANTERO, J.
In this case, we interpret Florida's unlawful compensation statute, which prohibits public officials from seeking or accepting unauthorized benefits in return for performance or nonperformance of official duties. See § 838.016(1), Fla. Stat. (1999). In this case, a police officer was convicted of soliciting sex in return for not issuing a traffic citation. We must decide whether the State may prove a violation through circumstantial evidence and whether the statute requires proof of an agreement. In the decision on review, the court held that the State must present direct evidence of an agreement. See Castillo v. State, 835 So.2d 306, 309 (Fla. 3d DCA 2002). That holding expressly and directly conflicts with State v. Gerren, 604 So.2d 515, 520-21 (Fla. 4th DCA 1992). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. We hold that circumstantial evidence is sufficient to prove the offense, and that proof of a specific agreement is not required. We therefore quash Castillo.

I. Facts and Proceedings Below
We present the facts in the light most favorable to the jury verdict. At about 4 a.m. on March 9, 2000, nineteen-year-old A.S., who had been drinking heavily, was traveling at about 55 m.p.h. in a 40 m.p.h. speed zone when a police cruiser drove up behind her with its overhead lights on. The respondent, Miami-Dade County Police Officer Fernando Castillo, on duty and in uniform, was driving. A.S. pulled over near a Burger King restaurant. Using the patrol car's loudspeaker, Officer Castillo ordered her out of her vehicle. A.S. feared she would be arrested because she was both drunk and speeding. As she walked toward the officer, she stumbled. Castillo remarked that "[t]he party must have been good." After rummaging through her wallet, Castillo told A.S. to follow him into the empty Burger King parking lot. She complied. They both exited their cars and talked for awhile. Castillo was very friendly, smiling and touching A.S.'s shoulder as he stood close to her. Castillo noticed alcohol on her breath. At one point, Castillo asked her, "Do you want to follow me?" She said, "what?" and he replied, "You are going to follow me." Afraid not to obey, she complied. Castillo led her to a nearby deserted warehouse area. Again they exited their cars. He leaned her back on the hood of her car, pulled her pants and panties down, and mumbled "something like `let me get that thing on.'" Commenting that she had the body of a stripper, he had vaginal intercourse with her. Because she was scared, A.S. did not look or say or do anything, and when he finished, she felt wetness on her lower stomach. As they dressed, Castillo smiled and *692 told her that she was lucky he did not give her a ticket. He gave her his beeper number and they each drove away.
Castillo did not report his over-forty-minute encounter with A.S. Instead, he reported that during that time he was engaged in various other patrol duties.[1]
Castillo was charged with, and a jury found him guilty of, unlawful compensation and official misconduct. See § 838.016(1), Fla. Stat. (1999); § 839.25, Fla. Stat. (1999). The trial court denied Castillo's motion for judgment of acquittal. On appeal, the Third District Court of Appeal reversed the conviction of unlawful compensation. The district court focused on A.S.'s trial testimony that before she followed Castillo to the warehouse he never specifically stated that he would arrest her if she did not have sex with him. 835 So.2d at 309.[2] The court concluded that because of "the absence of any spoken understanding," the State failed to establish an agreement to these terms. See id. The court thus required direct evidence of a specific agreement to prove unlawful compensation.[3]

II. Discussion of Law
The unlawful compensation statute provides in pertinent part as follows:
(1) It is unlawful for any person corruptly to give, offer, or promise to any public servant, or, if a public servant, corruptly to request, solicit, accept, or agree to accept, any pecuniary or other benefit not authorized by law, for the past, present, or future performance, nonperformance, or violation of any act or omission which the person believes to have been, or the public servant represents as having been, either within the official discretion of the public servant, in violation of a public duty, or in performance of a public duty.
§ 838.016(1), Fla. Stat. (1999) (emphasis added). Section 838.014, Florida Statutes (1999), defines the terms "benefit" and "corruptly":
(1) "Benefit" means gain or advantage, or anything regarded by the person to be benefited as a gain or advantage, including the doing of an act beneficial to any person in whose welfare he or she is interested.
....
(6) "Corruptly" means done with a wrongful intent and for the purpose of obtaining or compensating or receiving *693 compensation for any benefit resulting from some act or omission of a public servant which is inconsistent with the proper performance of his or her public duties.
We must decide two related issues concerning the statute: (A) whether a violation may be proved through circumstantial evidence; and (B) whether the State must prove a specific agreement. We discuss these issues below.

A. May the State Prove a Violation by Circumstantial Evidence?
The district court in this case reversed Castillo's conviction because the State failed to establish a "spoken understanding" that if A.S. submitted to sexual intercourse with Castillo, he would not issue her a citation. 835 So.2d at 309. Thus, the court required direct evidence of an agreement between the public official and the person unlawfully compensating him. In Gerren, on the other hand, the court specifically held that "[w]hile the state must show a quid pro quo, it should be permitted to establish this element indirectly, through the use of circumstantial evidence." 604 So.2d at 520-21 (emphasis added).[4] We agree with Gerren insofar as it holds that a violation of the statute may be proven through circumstantial evidence.
The statute itself is silent on the type of proof required. It certainly does not require either a "spoken understanding" or any other direct evidence of a violation. In the absence of explicit statutory direction, it has long been established that circumstantial evidence is competent to establish the elements of a crime, including intent. See Moorman v. State, 157 Fla. 267, 25 So.2d 563, 564 (1946) ("It is too well settled to require citation of authorities that any material fact may be proved by circumstantial evidence, as well as by direct evidence."); see also State v. Waters, 436 So.2d 66, 71 (Fla.1983) ("The element of intent, being a state of mind, often can only be proved by circumstantial evidence."), cited in Gerren, 604 So.2d at 520. Moreover, Florida courts have regularly reviewed bribery and unlawful compensation cases for the legal sufficiency of the circumstantial evidence to support the charges, without requiring direct evidence. See, e.g., Merckle v. State, 512 So.2d 948, 949 (Fla. 2d DCA 1987) (rejecting the contention that circumstantial evidence was legally insufficient and not inconsistent with reasonable hypothesis of innocence, and affirming convictions for bribery, receiving unlawful compensation, and extortion by a state officer), approved, 529 So.2d 269, 272 n. 3 (Fla.1988); Garrett v. State, 508 So.2d 427 (Fla. 2d DCA 1987) (finding the circumstantial evidence legally insufficient to support a conviction for receiving unlawful compensation); Bias v. State, 118 So.2d 63 (Fla. 2d DCA 1960) (affirming an unlawful compensation conviction where the officer "fined" a car's occupants $75 for various offenses, took the $25 proffered, and released the occupants, telling them he expected the rest to be paid later).
In Gerren, the Fourth District Court of Appeal warned that if an express agreement were required to prove a violation of the statute, a public servant "could receive funds or other benefits from interested persons" and avoid prosecution "so long as he never explicitly promises to perform his public duties improperly." 604 So.2d at 520. The court concluded that requiring proof of a violation through circumstantial evidence did not violate procedural safeguards. As the court noted, "`[t]he element of intent, being a state of mind, *694 often can only be proved by circumstantial evidence,'" and when guilt is proven by circumstantial evidence, the state is required to present evidence inconsistent with the defendant's theory of defense. Id. at 520 (quoting State v. Waters, 436 So.2d 66 (Fla.1983)); see State v. Law, 559 So.2d 187 (Fla.1989).
Therefore, we hold that circumstantial evidence can establish a violation of the unlawful compensation statute. The district court's requirement of a "spoken understanding" imposes too high a burden on the State and would prohibit prosecution of all but the most blatant violations. Public corruption has become sophisticated enough at least to expect that public officials soliciting or accepting unlawful compensation ordinarily will not be so audacious as to explicitly verbalize their intent.

B. Does the Statute Require an Agreement?
The second, related issue we must consider is whether the unlawful compensation statute requires evidence of an agreement or meeting of the minds. The district court held it did. Castillo, 835 So.2d at 309. It concluded that without direct evidence that Officer Castillo actually stated that he would arrest A.S. if she did not have sex with him, there was only evidence that A.S. believed this to be true. Id. The Fourth District in Gerren also required proof of a "meeting of the minds." Although the Fourth District did not require that an agreement be explicit, it did require proof at least of an "implicit agreement." See 604 So.2d at 517, 520-21.[5] We respectfully disagree.
On its face, the statute does not require an agreement. In fact, it criminalizes the mere solicitation of a "benefit not authorized by law," regardless of whether the solicited party accepts the offer. The statute expressly makes it unlawful for a public servant corruptly to request, solicit, or accept any pecuniary or other benefit not authorized by law. Such language implies that, although evidence of an agreement is sufficient to prove a violation  the statute also prohibits agreeing to accept a benefit  it is not required. Section 838.016(1) further requires that the public servant must request, solicit, accept, or agree to accept the unlawful benefit "corruptly," which means "with a wrongful intent and for the purpose of obtaining or compensating or receiving compensation for any benefit resulting from some act or omission of a public servant which is inconsistent with the proper performance of his or her public duties." § 838.014(6), Fla. Stat. The statute thus focuses on the official's intent, not on an agreement.[6] The statute does not require that the person from whom the *695 public official requests or accepts a benefit agree to  or even understand  the exchange.
Other states with similarly phrased bribery statutes have concluded that proof of an agreement is not required to establish violation of the statute. In Commonwealth v. Schauffler, 397 Pa.Super. 310, 580 A.2d 314 (1990), for example, the statute in question provided that "a person is guilty of bribery, a felony of the third degree, if he offers, confers or agrees to confer upon another, or solicits, accepts or agrees to accept from another ... any benefit as consideration for a violation of a known legal duty as public servant or party official." 18 Pa. Cons.Stat. Ann. § 4701(a)(3) (West 1983). The statute resembles Florida's because it, too, focuses on the wrongdoer's intent. The Pennsylvania court relied on the commentary to section 240.1 of the Model Penal Code, from which its statute was derived, and cited the commentary as follows:

[I]t is sufficient if the actor believes that he has agreed to confer or agreed to accept a benefit for the proscribed purpose, regardless of whether the other party actually accepts the bargain in any contract sense. ... The evils of bribery are fully manifested by the actor who believes that he is conferring a benefit in exchange for official action, no matter how the recipient views the transaction.... Each defendant should be judged by what he thought he was doing and what he meant to do, not by how his actions were received by the other party.

580 A.2d at 317-18 (quoting Model Penal Code § 240.1 cmt. 4.(b)-(c) (1980)) (emphasis added); see also State v. Martin, 95 Or.App. 170, 769 P.2d 203, 205 n. 1 (1989) (citing the state's criminal code commentary on its bribe-giving statute, which explained that the mens rea requirement of "with the intent" was meant "to avoid the necessity of proving a `meeting of the minds'" because "subjective wrongful intent of the bribe offeror is the gravamen of bribe giving").
We agree with this reasoning and hold that section 838.016(1) does not require a specific agreement. Only corrupt intent must be shown.
In requiring a meeting of the minds, the district court relied on our decision in State ex rel. Grady v. Coleman, 133 Fla. 400, 183 So. 25 (1938). In Grady, this Court discussed the legal sufficiency of an information to charge a crime under a predecessor unlawful compensation statute.[7] The Court described the violation of the statute as follows:
The gravamen of the action as stated [by] Mr. Justice Ellis in [Callaway v. *696 State, 112 Fla. 599, 152 So. 429 (1938)], is the exacting by the officer of compensation or extortion practiced by demanding the sum required? If the money is demanded and there is a meeting of the minds on the part of the officer who is to be compensated or rewarded by his exaction or acceptance of the reward other than that allowed by law, and the party from whom it is exacted or accepted, then the statutes, supra [§§ 7486-7487, Comp. Gen. Laws (1927)], have been violated.
183 So. at 31. We do not read Grady as holding that proof of a meeting of the minds is required; only that it suffices. The Court in Grady stated only that if a mutuality of understanding is present along with other facts, the statute is violated. Moreover, Grady analyzed an earlier version of the statute, which prohibited only exacting or accepting remuneration. The current statute, section 838.016(1), prohibits requesting, soliciting, accepting, or agreeing to accept a benefit. Even assuming the statute at issue in Grady prohibited only a specific agreement, the prohibition has since been broadened.
Thus, the statute only requires the State to prove the corrupt intent of the actor, which in this case is the police officer. We disapprove both Castillo and Gerren to the extent they require proof of a meeting of the minds to prove a violation of the statute.

C. Did the State Present Sufficient Circumstantial Evidence of a Violation of the Statute?
Applying our holdings that neither direct evidence nor evidence of a specific agreement is required to establish a violation of the statute, we conclude that competent, substantial evidence supports Castillo's conviction in this case. The evidence shows that Castillo, a uniformed officer in a marked patrol car, stopped A.S. while she was exceeding the speed limit. He recognized her intoxicated state when he remarked, after she stumbled, that "[t]he party must have been good." He required A.S. to follow him to the nearby deserted restaurant parking lot where he was "very friendly" while they spoke. He smelled alcohol on her breath. He then required A.S. to follow him again, this time to a deserted warehouse area where he initiated and had intercourse with her. Afterwards, he told her she was lucky he did not ticket her, and he permitted her to leave. Castillo not only did not report his contact with A.S., but he misrepresented his activities during this almost hour-long period as official duties. Thus, the evidence of the officer's words and actions demonstrated his understanding that A.S. was violating the law when he stopped her, and his releasing A.S. without legal consequence after having sex with her demonstrates his corrupt intent in soliciting an unlawful quid pro quo.
The district court's conclusion that if Castillo thought that A.S. followed him to the warehouse voluntarily, then Castillo did not violate the statute, is groundless for two reasons. First, the evidence, taken in the light most favorable to the jury verdict, was that he required her to follow him. Second, as we explained above, the other participant's state of mind is irrelevant; *697 it is the public servant's state of mind that matters. Although an agreement may be sufficient to prove a violation, it is not necessary. Accordingly, whether Castillo thought or believed A.S.'s actions were voluntary or whether her actions were in fact voluntary is irrelevant. Castillo demonstrated the causal relationship of his actions when he told A.S., after having intercourse with her, that she was lucky he did not give her a ticket. Thus, the competent, substantial evidence in this case demonstrates that Castillo acted with corrupt intent in accepting an unauthorized benefit  sex  in exchange for his exercising his discretion not to issue a traffic citation.

III. Conclusion
For the reasons stated, we quash the decision below and remand for proceedings consistent with this opinion.
It is so ordered.
ANSTEAD, C.J., and WELLS, PARIENTE, LEWIS, QUINCE, and BELL, JJ., concur.
NOTES
[1] Castillo's version of events, which the jury rejected, differed from A.S.'s. He testified that A.S. waved him over as he was passing her; that she suggested they talk at the Burger King; that she unexpectedly followed him from there and waved him down again to chat some more, and they did; that she met him a few hours later when his shift ended; and that at that time they engaged in masturbatory sex. Castillo testified that he did not tell the officers investigating A.S.'s allegations that he engaged in a sexual act with her because they did not ask.
[2] During cross-examination, A.S. testified as follows:

Q. He never suggested he was going to arrest you for DUI?
A. No.
Q. He never said anything about along the lines of DUI, the entire encounter, did he?
A. No.
Q. It was never any quid quo pro [sic] that he wouldn't arrest you if you come with me, was there?
A. No.
[3] The court affirmed Castillo's conviction for official misconduct. Castillo asks us to quash that part of the opinion. Because determination of this issue is not integral to the conflict issue presented for review, we do not address it. See Heidbreder v. State, 613 So.2d 1322, 1323 (Fla.1993) (declining to address the issue lying beyond the scope of conflict jurisdiction).
[4] "Quid pro quo" means "[a] thing that is exchanged for another thing of more or less equal value; a substitute." Black's Law Dictionary 1261 (7th ed.1999).
[5] The court in Gerren uses the phrase "quid pro quo" as including the word "agreement"  i.e., a meeting of the minds. The two are not synonymous, however. A "meeting of the minds" means actual assent to a contract. See Black's Law Dictionary 997 (7th ed.1999). A "quid pro quo" refers to something exchanged for something else. It does not require an agreement. For example, in sexual harassment cases, one must demonstrate a discriminatory quid pro quo, not a meeting of the minds between the victim and the harasser. See Huitt v. Market St. Hotel Corp., No. 91-1488-MLB, 62 Fair Empl. Prac. Cas. (BNA) 538, 1993 WL 245744 *3 (D.Kan. June 10, 1993) (stating in a quid pro quo sexual harassment case that "despite the contractual overtones of the term `quid pro quo,' actionable sexual harassment of this variety requires no `meeting of the minds'").
[6] The trial court in this case gave the following jury instruction, in accordance with the standard instruction:

Before you can find the defendant guilty of unlawful compensation or reward for official behavior, the state must prove the following four elements beyond a reasonable doubt:
1. [Castillo] was a public servant.
2. [Castillo] requested, solicited, accepted, or agreed to accept from [A.S.] the thing described in the charge in this case as a pecuniary or other benefit.
3. The pecuniary or other benefit was something of value, benefit, or advantage to [Castillo].
4. The request, solicitation, acceptance, or agreement to accept was corruptly made for the past, present, or future performance, nonperformance or violation of any act or omission of [Castillo] that
(a) [A.S.] believed to be either within the official discretion of [Castillo], or in violation of a public duty of [Castillo], or in performance of a public duty of [Castillo], or
(b) [Castillo] represented as being either within his official discretion or in violation of his public duty or in performance of his public duty.
[7] This statute, section 7486, Compiled General Laws (1927) (emphasis added), provided as follows in pertinent part:

It shall be unlawful for any officer, State, county or municipal, or any public appointee, or any deputy of any such officer or appointee, to exact or accept any reward, compensation, or other remuneration other than those provided by law, from any person whatsoever for the performance, non-performance or violation of any law, rule or regulation that may be incumbent upon the said officer or appointee to administer, respect, perform, execute or to have executed....
The statute was later codified at section 838.06, Florida Statutes, which was repealed and readopted as section 838.016, Florida Statutes, effective in 1975. Over the years the language has undergone various changes. The most important evolution for our purposes is the change in verbs over the years from "exact or accept" in 1927 to the current "request, solicit, accept, or agree to accept."